**Willard ARONSON, Plaintiff in Error,**

**v.**

**Joanne R. ARONSON, Defendant in Error.**

**No. 43354.**

Supreme Court of Oklahoma.

April 21, 1970.

Berry & Weiss, by Charles N. Berry, Jr., Oklahoma City, for plaintiff in error.
Halley, Spradling, Stagner & Alpern, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

The parties to this appeal appear here in reverse order to their appearances in the trial court, and will be referred to by their designations in that court of "plaintiff" and "defendant". The issues presented arose in an action in which their marriage was dissolved by divorce.

Plaintiff and defendant were married in Philadelphia in 1953, while defendant was a student in the University of Pennsylvania's Medical School, and plaintiff was a student at Temple University. After defendant had obtained his M.D. degree and plaintiff had obtained a B.S. degree in elementary education, and defendant had completed a period of military service during which plaintiff gave birth to their oldest son, now about 13 years of age, and a daughter, now about 10 years old, the family returned to Philadelphia, where defendant completed his residency. In 1960, the family moved to Eau Claire, Wisconsin, where defendant was employed as a pathologist, at a salary of $40,000.00 per year. During 1961, the couple's third and last child, another son, was born; and, in 1964, they built a suburban home there at a cost of about $45,000.00.

Defendant had a medical secretary we will refer to as "Mrs. S"; and, in January, 1965, he left his family and moved into an apartment in Eau Claire. The next month he filed suit for divorce there, but did not testify, and the suit was dismissed.

Thereafter, plaintiff sued for, and obtained, separate maintenance and support from defendant by decree of the same Wisconsin court. When the decree was entered, plaintiff and her children had moved back to the Philadelphia area, but, by the decree's provisions, she was given possession of the above mentioned Eau Claire home, with the responsibility of maintaining it and making its mortgage payments out of the $900.00 per month support money defendant was ordered to pay. The decree also required defendant to set aside $150.00 per month for the children's future college educations, required him to pay certain special attorneys' fees, gave him child visitation privileges, and contained other provisions not particularly pertinent here.

In September, 1967, defendant moved to Oklahoma City, where he is employed by a hospital, as a pathologist, at an annual salary of $60,000.00. The same Fall, Mrs. S moved here and is employed as a secretary in an Oklahoma City "medical complex".

Thereafter, in February, 1968, plaintiff instituted the present action in Oklahoma County, alleging, among other things, that she and defendant had been separated several years by reason of "a state of incompatibility", entitling her to a decree of alimony without divorce, and that defendant should be ordered to pay her, on the basis of his present income, a reasonable sum, which she alleged to be not less than $30,-000.00 per annum, "in order to support" their children and herself in the manner warranted by his present income.

Plaintiff further alleged that she was without funds to adequately compensate her counsel and pay the cost of prosecuting her case; and she prayed the court to make provision for the payment of these expenses.

Thereafter, defendant filed an answer and cross-petition, consisting of a qualified, general denial, and allegations that plaintiff's conduct caused the parties' incompatibility and separation. Defendant further alleged that he had complied meticulously with the Wisconsin court's above described separate maintenance and support judgment; and he prayed for a divorce from plaintiff.

Thereafter, plaintiff filed a Reply and Answer to defendant's Answer and Cross-petition, consisting of a qualified, general denial, and allegations to the effect that the parties' incompatibility had resulted from defendant's carrying on a "romantic liaison" with Mrs. S, who was and is his secretary and laboratory assistant. Plaintiff further alleged, among other things in substance, that, because of this, defendant "should be precluded" from relying upon the parties' alleged incompatibility as a ground for divorce.

After the filing of other pleadings, and further court proceedings, unnecessary to mention, the case was heard on its merits November 27, 1968. At the beginning of this trial, it was stipulated that "the issue of attorneys fees is reserved for a later hearing following the determination of this matter on its merits."

At the close of the evidence on that day, the court rendered judgment granting defendant a divorce on his cross-petition, and giving him certain specified rights to visit his children. The judgment also directed defendant to pay plaintiff the sum of $200.00 per month for the support of each of their children, and to pay the necessary expenses of the children's orthodontic treatment and to maintain the Blue Cross policy, then in effect, covering them. By way of property division, the decree gave each of the parties the automobiles, furniture, and jewelry then in their respective possessions, except a piano, which it ordered defendant to ship to plaintiff, as her separate property. The decree also gave plaintiff, as her separate property, 10 shares of Northern Pacific Railway stock

and 12 shares of National Presto Industries, Inc., stock. It gave defendant, as his separate property, 156.742 shares of Investors Diversified Service and also the parties' aforementioned Eau Claire residence. As another part of its property division, the decree granted plaintiff a judgment of $14,000.00, payable on or before December 1, 1969, without interest before maturity; and it established said judgment as a lien on the Eau Claire residence and ordered defendant to give plaintiff a mortgage on said property to secure its satisfaction.

As alimony, the decree awarded plaintiff the sum of $60,500.00, payable in 121 monthly installments of $500.00 each, beginning December 1, 1968. It contained other provisions, unnecessary to mention, except one, which read:

"(19) The Court continues for further hearing, upon agreement of the parties, the claim of the attorneys for the Plaintiff for an order that the Defendant pay attorney's fees and the amount thereof."

Thereafter, both parties filed motions for new trial, which were overruled on December 20, 1968.

Thereafter, the court conducted a hearing on January 6, 1969, for the declared purpose of "hearing evidence and considering the fixing of attorney's fee for Plaintiff's counsel * * *".

At the beginning of the hearing, defense counsel orally moved "that plaintiff's application" for such fee be dismissed, but the court overruled this motion and heard evidence as to what amount should be fixed as plaintiff's attorney's fee. At the close of said hearing, the court entered an order and/or judgment awarding plaintiff's attorneys an attorney's fee of $7,000.00, in addition to the $750.00 previously paid said attorneys by defendant, and allowing defendant six months, from said date, within which to pay it. Thereupon, defendant interposed a motion for a new trial, which was overruled at the same hearing.

Thereafter, on January 15, 1969, plaintiff filed a motion, which, in substance, asked the court to vacate both of its above described judgments of November 27, 1968, and January 6, 1969, respectively, on the ground that they were voidable, and irregular, because all of the issues in the action had not been determined in one single judgment. A week later, defendant filed a response to said motion, in which he cited the case of Friedman v. Friedman, 132 Okl 45, 269 P. 257, and alleged, among other things in substance, that the things and matters, referred to in plaintiff's motion to vacate, did not constitute "irregularity in obtaining judgment" under the terms of Title 12, O.S.1961, § 1031, subdiv. 3, authorizing district courts to vacate their own judgments, and further alleging that, under said statute, the court had no power to vacate its own judgments on that ground, pursuant to a motion filed after the term at which they were rendered.

Thereafter, on January 23, 1969, the court heard both plaintiff's above described motion to vacate, and defendant's replies thereto, and, at the conclusion of said hearing, sustained plaintiff's motion, and set aside both of its previous judgments of November 27, 1968, and January 6, 1969, respectively. At the same hearing, the court thereupon incorporated, in a new judgment of that date, all of the findings of fact and conclusions of law contained in those two previous judgments, as well as all of those judgments' other provisions, dissolving the parties' marriage on defendant's cross-petition, granting plaintiff child support, decreeing a property division, awarding attorney's fees for plaintiff's counsel, etc.

After the overruling of a motion for new trial, filed by defendant, the latter lodged the present appeal, and plaintiff followed the filing of his petition in error in this Court with her filing of a pleading entitled "COUNTER-APPEAL PETITION IN ERROR."

Under defendant's first proposition for reversal, he takes the position that, under Friedman v. Friedman, supra, plaintiff's "main action" was concluded when the trial court rendered the first hereinbe-

fore mentioned decree of November 27, 1968, and that later, especially after the beginning of a new court term in January, 1969, said court had no jurisdiction to vacate that decree and enter its aforementioned decree of January 23, 1969, containing the award of $7,000.00 as a fee for plaintiff's attorneys, citing additionally Title 12, O.S.1961, § 1031, McCornack v. Fleming, 70 Okl. 50, 172 P. 952, Hatfield v. Hatfield, 59 Okl. 132, 158 P. 942, and other cases.

While this Court has never said that any court may be clothed with jurisdiction by agreement of the parties, or that one who has been a party to such an agreement may be estopped from challenging the court's jurisdiction (see Wade v. Hope & Killingsworth, 89 Okl. 64, 213 P. 549), under the circumstances of this case, we think defendant cannot be heard to successfully contend that this action was entirely concluded, during the trial court's July 1968 term (by its purported decree of November 27, 1968) and to deny that trial of the action (because of "unfinished business", Burba v. Burba, Okl., 460 P.2d 893, 897) was validly extended, for final conclusion, into said court's January 1969 term. If defendant was going to rely, in this appeal, as he now attempts to, on the Friedman Case's rationale that the trial proceedings terminated during the July 1968 term, when the court, in November of that year, rendered its first decree on the "main action", or marriage—dissolution part of the proceedings, so that, despite the aforementioned order of continuance (he had consented to) said court thereafter lacked jurisdiction either to determine the amount to be awarded plaintiff's attorneys, or to vacate its "main action" determinations, he should have let this be known at the aforementioned hearing of January 6, 1969. Instead, his motion to dismiss the proceedings, in regard to the attorneys' fee, was made on the sole ground "that our statute, 12 O.S.A. 1276, provides that the Court has authority to allow an attorney's fee to the wife's attorney *only when the divorce has been granted to the wife.*" (Emphasis

added) All indications, from the record and briefs, are that defense counsel never entertained any thought, or inclination, to challenge the trial court's January 1969 proceedings, on the ground of the court's loss of jurisdiction, until plaintiff's counsel later discovered this Court's opinion in the Friedman Case and concluded, shortly before they filed their motion to vacate on January 15, 1969, that, to obtain a valid attorney fee allowance, they had better have the previous two orders and/or judgments set aside. Under the circumstances, it would appear that the position defendant later took, in his response to plaintiff's motion to vacate, was an afterthought. That position represented a change from the position he had taken at all previous times in the case (that the court under its "consent" order of continuance still had jurisdiction in January, 1969, over plaintiff's claimed right to an attorney fee allowance) to a new and different position and theory that said court had no jurisdiction. Such change of position, as noted in Mid-Continent Petroleum Corp. v. Jamison, 197 Okl. 387, 171 P.2d 976, 985, "could easily work an injustice", and it calls for the invocation of principles of estoppel and waiver to prevent such a result. As said in Wray, et al, v. Ferris, 184 Okl. 132, 85 P.2d 402, 403:

> "It is a cardinal rule that one cannot be heard to urge error in the proceeding leading to a judgment or order which was entered by his own consent."

A principle this Court has long adhered to is that a party cannot complain of errors he has "helped to create * * *". St. Louis-San Francisco Railway Company v. King, Okl., 278 P.2d 845, 851. Defendant attempts to draw distinctions between this case and Burba v. Burba, supra, in which we upheld an award of attorneys' fees entered during the district court's July 1967 term, where the divorce trial, at which the fees were (at least partially) earned, was concluded during said court's previous January term. Defendant points out that in that case the proceedings were continued from the earlier, to the later, court term

by a series of orders through which the court ostensibly retained its jurisdiction over the proceedings from one certain date to a later certain date, without any gap, void, or lack of continuity, in between. He calls attention to the fact that the hereinbefore quoted 19th paragraph of the first decree the court entered in this case did not purport to continue the case, for consideration of the matter of plaintiff's attorneys' fees, into the court's next term. He also calls our attention to the fact that there is nothing in the record to indicate he agreed to the matter being considered after the court's term that ended in December, 1968; and he says that he cannot be regarded as having invited, or consented to, as long a delay as that which occurred. We are not impressed by this argument. As defendant made no mention of any such matter, nor objected to the court's hearing of January 6, 1969, as being in violation of the parties' previous hereinbefore quoted stipulation that the "issue of attorneys fees" be reserved for hearing until after the determination of other issues in the case, it would appear that the court's consideration of that issue (at least for the purpose of determining whether attorney's fees may be awarded a wife, who is not granted a divorce) at that new and later term, had his tacit consent. In view of the foregoing, we are of the opinion that defendant's belated challenge of the trial court's jurisdiction to award plaintiff's attorneys a fee at this *second* of the court's hereinbefore mentioned hearings *after the beginning* of its January 1969 term "came too late" (as we said of defendant's attempted challenge, in his motion for a new trial, of the sufficiency of the plaintiff's pleadings in Vickers v. Horster, Okl., 451 P.2d 7, 12) to be effective in this appeal. And we will regard the trial court's judgment of January 23, 1969, as no different from one entered in the exercise of such a court's inherent power over its previous judgments of the same term, where such power is invoked during that term, but not exercised until the following term. Such exercise of that

power is not nullified by this Court on appeal, unless it constitutes an abuse of discretion. (See the quotation from Phillip Carey Co. v. Vickers, 38 Okl. 643, 134 P. 851, in Parks v. Haynes, 52 Okl. 63, 152 P. 400.) In the trial court's action on January 23, 1969, vacating its two previous orders and/or judgments in the present case, we find no abuse of its proper judicial discretion.

█ Under defendant's second proposition for reversal of that part of the decree awarding plaintiff's attorneys the seven-thousand-dollar fee, he argues that the court erred in overruling the motion he made, at the January 6, 1969, hearing, that the application for such fee be dismissed on the hereinbefore cited ground that, under Section 1276, supra, the court can allow an attorney's fee to a wife's attorneys *only* when she has been granted the divorce.

There is no merit to this argument, and defendant cites no cases in which this Court has interpreted the wording of Section 1276, supra, in such a way as to support it. Such an interpretation would leave the courts of this State without statutory authority to require the husband to pay the wife's attorneys' fees, in cases like Rakestraw v. Rakestraw, Okl., 345 P.2d 888, where the only reason that granting the divorce to the wife (as well as to the husband) was not upheld was because she did not seek it. See also Armstrong v. Armstrong, Okl., 462 P.2d 656, and Eisenreich v. Eisenreich, Okl., 323 P.2d 723. It would also preclude orders for husbands to pay their wives' attorney's fees in divorce cases that are tried, but are dismissed before entry of a decree. It will be remembered that plaintiff instituted the present case, seeking support, without divorce. In his reply brief, defendant recognizes that, under Section 1276, supra, ordering him to pay the fees of plaintiff's attorneys, for aiding her *in preparing her case for trial,* is proper, under said section's provisions concerning "the expenses of the suit"; but, in accord with his interpretation of said section, he expresses the view that "once the divorce is granted * * *, if it is not

granted to the wife, then her attorney is not entitled to any additional fee." We cannot adopt any such restrictive, and unreasonable, interpretation of said section; and, in the absence of the citation of any authorities to support it, and on the basis of the soundness of the opposite view, together with precedents for following it, it is our opinion that defendant's argument is without substantial merit. We therefore hold that the trial court did not exceed his authority in ordering defendant to pay plaintiff's attorneys fees, even though the divorce was awarded defendant, instead of plaintiff, who did not seek one.

In her counter-appeal, plaintiff argues three propositions set forth in her one brief. The first has to do with claimed errors of the court related to defendant's refusal to answer certain questions propounded to him by her counsel; and the other two propositions may be generally said to deal directly or indirectly with the claimed inadequacy of the divorce decree's alimony, and child support, awards.

■ Defendant's refusal to testify was first brought to the court's attention by a motion plaintiff filed before trial, to dismiss his cross-petition for the divorce, on the ground that, in a deposition he had given in this case, he had refused to answer certain questions propounded to him by plaintiff's counsel concerning his relationship with the aforementioned Mrs. S, and other questions concerning items of household furniture, particularly the aforementioned piano, that the parties had used in their Eau Claire home.

Arguments, and authorities, concerning the motion to dismiss were presented at a pretrial conference, and, at the beginning of the trial, defendant's said deposition was admitted in evidence for the purpose of the motion's further consideration *only,* after which the motion was overruled, and plaintiff excepted to said ruling. Then ensued a colloquy between the trial judge and the respective counsel for both parties, in which plaintiff's attorney complained that defendant had not furnished sufficient data concerning his financial affairs and property, to enable the court "to determine the issues in this case as to what this man ought to pay in alimony if granted a divorce, or separate maintenance if that be the decision."

The controversy was finally resolved by defendant's production of certain records that had been subpoenaed, the taking of a short recess to examine them, and the court's offer to grant plaintiff a continuance, if it became necessary in counsel's opinion to ask for one, " * * * even at the end of the proceedings before the case is finally submitted, * * *".

Both plaintiff and defendant thereafter testified, and though defendant refused to answer a question about a certain Wisconsin bank check, he had written many months before, on the ground his answer might incriminate him, he finally disclosed the address of Mrs. S's home in Oklahoma City and confirmed plaintiff's expressed belief that the hereinbefore mentioned piano was there. He also revealed that he had written a check for certain items that went to that address and candidly admitted (what plaintiff already knew) that when his children had visited him in Oklahoma City they had spent part of their time there.

Though plaintiff renewed her aforementioned motion to dismiss and it was overruled, on more than one occasion during defendant's cross-examination and at the close of his evidence, plaintiff, in her brief, falls short of demonstrating how she was prejudiced by such rulings. Her brief cites court decisions and other authorities to the effect that a party who invokes his privilege against self-incrimination should not be permitted to prevail in obtaining the relief he is seeking, and she argues that defendant "should have been required to testify as to property and financial matters." With the exception of the one above-mentioned small check, defendant appears to have answered all other questions propounded to him about such matters; and we observe that, at the close of defendant's evidence, the court reminded

plaintiff's counsel of his previous offer to grant him a continuance, but counsel positively declined the offer. At the trial, plaintiff testified that she and defendant were incompatible, and she expressed no objection to their being divorced. Although the trial court excluded evidence offered by the parties as to the cause of their incompatibility, in their briefs, they do not contend this was error. We find no basis for holding that the trial court's refusal to sustain plaintiff's motion to dismiss defendant's cross-petition for a divorce was prejudicial, or ground for the reversal, or modification, of the judgment herein appealed from. And we so hold.

■ Under plaintiff's "PROPOSITION NUMBER 2", she contends that the trial court abused his discretion in awarding her no more alimony than that provided in his decree. She calls our attention to defendant's sixty-thousand-dollar income and to the fact that the decree awarded him the parties' Eau Claire home, in which they had an equity of $34,173.89 (and which was the only property of substantial value that they had accumulated since their marriage). She argues that in view of this, and the evidence she produced of hers and her children's living expenses in the Philadelphia area, and her modest earnings as a substitute elementary school teacher, her alimony award of only $500.00 per month for 121 months is inadequate and not commensurate with defendant's income and the alimony awards in similar cases. Plaintiff contends that she should have $2,200.00 per month in view of defendant's present income. On the other hand, defendant argues, in substance, that in view of the statement he introduced in evidence as his Exhibit 5, showing that during 11 months of 1968 his expenses were such that he had only $10,779.98 out of his income with which to pay his personal living costs, and the fact that since the divorce was granted to him rather than to plaintiff (so that she is not entitled to alimony *as a matter of right*), the trial court did not abuse his discretion in its award of alimony, and that same should not be disturbed. He also points to an offer of evidence he made during the trial, contemplated to reveal some of plaintiff's extra-marital activities after the couple's separation, and infers that, with such a showing of fault, plaintiff was unworthy of the alimony she was awarded. This argument goes beyond the issues in the case and the record of evidence submitted and considered by the trial court. Absent any contention that said court erred in excluding such evidence, we will likewise not consider it.

We notice from defendant's Exhibit 5 that this list of his income and expenses includes items of both income and expenses, including income taxes of more than $27,060.03, that probably will not reoccur in future years, at least, in such substantial amounts, when tax deductions for his alimony payments are claimed. We also notice that the list of plaintiff's and the children's expenses contains substantial items of expense for the rental of their apartment, which should not reoccur in the future, if the $14,000.00, which the trial court awarded her, in its property division, is used to apply on a residence for her and the children. Use of this money for that purpose would substantially reduce the total of $1,005.89 and $1,688.00, respectively, in monthly expenses shown on these itemized lists.

After having thoroughly examined the evidence, and taking into consideration all of the various factors properly figuring in such a determination, we are of the opinion that, under the circumstances, the trial court abused his discretion in not awarding plaintiff alimony in the total sum of $90,750.00, payable in 121 monthly installments of $750.00 each, rather than alimony in the total sum of $60,500.00, payable at the rate of $500.00 per month.

■ Under "PROPOSITION NUMBER 3" of plaintiff's brief, she argues that the trial court also abused his discretion in requiring defendant to pay no more than $200.00 per month each for the support of the couple's three minor children. She says that her uncontradicted evidence shows that this allowance should have been

$400.00 per month for each of the children. In our opinion, the evidence does not support that large an allowance, when items of expense properly attributable to plaintiff, rather than to the children, are excluded from consideration. From our examination of the evidence, it is our opinion that the trial court did not abuse his discretion in the matter of child support; and his allowance therefor will be upheld.

 As the third, and final, proposition of defendant's brief, he contends that the trial court's allowance of $7,000.00 for plaintiff's attorneys' fees was excessive and constituted an abuse of discretion. He points out that the trial of the case consumed only 8 hours of time, and that on the basis of her attorney's showing that he had expended approximately 130 hours of work on the case, the expert witness for defendant expressed the opinion that a fee of between $25.00 and $40.00 per hour would be a reasonable one and that the total of such fee should not be less than $3,250.-00, nor more than $5,200.00. He recognizes that, on the basis of plaintiff's expert witness' testimony, the trial court might have allowed a fee of $12,800.00 (8% of $160,-000.00). Plaintiff says that, at defendant's present salary rate, he earns $6,600.00 for a like amount of professional time, and suggests that, in order to derive the same net earnings, a lawyer with an "average overhead" would have to charge $11,000.00 for that amount of his time. After considering all of the evidence pertinent to the subject of determining what would be a reasonable fee for plaintiff's attorneys in the present case, we think it supports the trial court's allowance for that item; and we hold that said court did not commit error, or abuse his proper discretion, in fixing said fee at the sum of $7,000.00, in addition to the $750.00 which said attorneys have already received.

In accord with the foregoing, the judgment appealed from is modified by awarding plaintiff alimony in the total sum of $90,750.00, payable at the rate of $750.00 per month for 121 months, and, as so modified, is hereby affirmed.

IRWIN, C. J., and WILLIAMS, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.

BERRY, V. C. J., and DAVISON, J., concur in part and dissent in part.

DAVISON, Justice (concurring in part and dissenting in part).

I dissent only to that part of the majority opinion which modifies the amount of alimony awarded the plaintiff. I am of the view that the judgment of the trial court should be affirmed relative to the amount of alimony awarded plaintiff.

I am authorized to state that BERRY, V. C. J., concurs in the above views.