Naomi June PRICE, Plaintiff in Error,

v.

L. Keith PRICE, Oklahoma Tank Lines, Inc.,
a corporation, Defendants in Error.

No. 44204.

Supreme Court of Oklahoma.

April 20, 1971.

Miskovsky, Sullivan, Embry & Miskovsky, Oklahoma City, for plaintiff in error.

Miller, Wilson, Adams & Spencer, Oklahoma City, for defendants in error.

BLACKBIRD, Justice:

This appeal involves the alimony and property division features of a divorce decree between plaintiff in error and defendant in error. The order of these principal parties' appearance here is the same as it was in the trial court, and they will hereinafter be referred to by their trial court designations of "plaintiff" and "defendant", respectively.

When the parties separated shortly before this action was commenced, they had two minor sons about 14 and 15½ years of age, respectively. All of their property, both personal and real (according to the court's unchallenged findings), had been jointly acquired during their 18-year marriage. The most valuable part of it was their stock in a gasoline trucking business, which defendant operates under the name of "Oklahoma Tank Lines, Incorporated", as its president. This stock, and stock in a similar business, had been acquired about 3 years previously. In order to borrow the money to buy the last three-fourths of the Company that was later reorganized and renamed to become the above Tank Lines corporation, it was necessary for the parties to pledge a savings account plaintiff had had for most, if not all, of the parties' married life in Oklahoma City's First National Bank & Trust Company, and into which she, more than a year previously, had deposited $6,928.34 of the fire insurance money the parties had received after their home on said city's East 53rd Street had been destroyed by fire. Plaintiff had also made periodic, and at times, regular monthly deposits in this account from her salaries as a secretary for one or more employers. By the time that all of the remaining stock in the gasoline transport business was acquired, this savings account had grown to approximately $15,000.00, and plaintiff consented to pledge it as collateral for the purchase, under an agreement that thereafter she would own one-half of the stock in the corporation, while defendant owned the remainder.

At the trial, it appeared that the parties had been living in apartments, several blocks apart, since their separation; that defendant's apartment was unfurnished, but that plaintiff's apartment was furnished partly with the items the parties had used for years, but mostly with new furniture recently purchased from Knight Furniture Company. It also appeared that plaintiff had in her possession a 1967 Model 4-door Thunderbird Sedan, on which a balance of $750.00 was still owed; that plaintiff's savings account had grown to a total of $17,878.00; that she also had $420.23 in a May Avenue bank; that plaintiff also had a diamond ring defendant had given her on their last wedding anniversary; and that she also had shares of stock, valued at $5,264.00, she had purchased in an insurance company.

By the decree which the court finally entered in April, 1970, both parties were granted a divorce, and defendant was given custody of the couple's two minor sons. Under the terms of the property division therein prescribed, plaintiff was given all of the last above described property, plus a savings account balance of $425.61 in Oklahoma City's Liberty Bank, and the sum of $50,000.00, payable in 114 monthly installments of $435.00 each, beginning May 1, 1970, and one additional monthly

installment of $410.00. Plaintiff was also awarded alimony in the total sum of $10,-800.00, payable @ $300.00 per month, beginning May 1, 1970, and extending over a period of 36 months, unless earlier terminated by her death or remarriage.

As his part of the parties' jointly acquired property, defendant was given the Oklahoma City real estate used as an office and terminal by Oklahoma Tank Lines, Inc., as well as all of the parties' shares of stock in said Company, and in another such company, in addition to the vacant 53rd Street lot, on which the parties' aforementioned home had burned, all of his life insurance policies, the sum of $425.61 in a Liberty Bank savings account, all funds on deposit in defendant's name in Oklahoma City's First National Bank & Trust Company, all furnishings in his possession, and all of his personal effects, regardless of their location.

The decree also provided that all of the property awarded to each of the parties, as his or her separate property, was to be free and clear of all claims, rights, or interests whatsoever of the other party. It further provided that each party should pay any indebtedness outstanding against the property awarded him or her as separate property. Under the provisions of the decree, the court retained "control over the judgment for the purpose of releasing the judgment lien on any" of defendant's realty, upon application. Each party was ordered to execute, and deliver to the other, all muniments of title necessary to effect the property division therein prescribed. And it was provided that in the event either party failed to do this within 30 days, the decree should operate as the necessary conveyances of title. In said decree, the court also ordered defendant to pay plaintiff's attorneys a fee of $5,000.00.

After plaintiff had filed her petition in error, and defendant had filed his cross-appeal here, this Court entered its order in June, 1970, directing defendant to pay the sum of $500.00 per month (beginning the first day of that month) for plaintiff's temporary support during the pendency of this appeal, or until the further order of this Court. This Court's said order also directed defendant to defray the expense of preparing the record for this appeal, and to pay the sum of $2,500.00 as an attorney fee for plaintiff's counsel, with the provision that this Court, in its final disposition of the present appeal and cross-appeal, might credit said sums against any judgment affirmed in plaintiff's favor and/or attorney fee allowed by its opinion herein.

From the take-off of the trial court's appearance docket, included in the original record filed herein, it is indicated that thereafter, on July 13, 1970, the trial court sustained defendant's motion to stay execution of its divorce decree's provisions as to all payments to plaintiff as alimony, or property division, and/or attorneys' fees, pending this Court's final decision.

To support the first part of her argument that the decree's award to her of the $50,000.00 "as payment pertaining to" the property division therein prescribed should be increased by this Court, plaintiff provides a tabulation (she calls a "summary") of the items of property she says the decree awards to the respective parties, and, by references to this "summary" and to the trial court's oral remarks from the bench in announcing his first judgment in the case on February 18, 1970, she attempts to show that the court made some miscalculations in arriving at what he deemed to be an equal division between the parties of their jointly acquired property. Defendant, on the other hand, takes the position that since the Judge's remarks were not incorporated in the journal entry of the court's decree (which was approved, as to form, by counsel for both parties), they cannot be employed to obtain modification or reversal of the decree, quoting Irwin v. Irwin, Okl., 416 P.2d 853, 857, and other cases there cited.

Defendant's position must be upheld. The wisdom and fairness of the rule he invokes is particularly noteworthy here, where the monetary values or sums listed opposite the items of property in plaintiff's summary were in dispute at the trial (including the value of the parties' jointly acquired household furnishings and the amounts of money in defendant's First National Bank accounts, which appeared, from his testimony at the court's hearing on February 18, 1970, to be far less than those set forth in the answers to interrogatories he subscribed to previously on December 23, 1969), and the total of plaintiff's savings mentioned in the Judge's oral remarks obviously excluded the Liberty National Bank savings, which the final decree, entered in April—after the court's previous February decree had been vacated—apparently divided equally between the parties.

Plaintiff further contends, in substance, that if the court intended, by its fifty-thousand-dollar award, to require defendant to pay her for the one-half interest in Oklahoma Tank Lines, Inc., that was in her name previous to the decree (which corporation the appraiser, Mr. Q, valued at a total of $130,000.00), she should have been awarded that amount in immediate cash, or its present equivalent, rather than extending such payment over 115 monthly installments. By computations entitled "TEN-PLACE INTEREST AND ANNUITY TABLES", attached to her brief as appendices, she attempts to show that the present value of $50,000.00, depreciated by the interest on the unpaid monthly balances of that sum, at rates ranging from 6% to 9% for the period over which defendant was allowed to spread the monthly installments, is a maximum beginning at $21,173.31 and graduating to a maximum of only $28,175.88. Under her theory, her award is many thousands of dollars less than the present value of her 50% of the stock in the Tank Lines corporation. She says defendant will have the use of "her money", or one-half of this business, for a period

of 115 months (just short of 10 years) and this Court must increase the amount of defendant's installment payments to include interest on the unpaid balance of the $50,000.00 in order for her to be treated fairly and equitably. She cites Berol v. Berol, 37 Wash.2d 380, 223 P.2d 1055, in an effort to show that the trial court abused his judicial discretion in not allowing her such interest. On the other hand, defendant asserts that the cited case is contrary to the rule in Oklahoma, which leaves the matter of the payment of interest on such awards within the trial court's discretion, citing Harden v. Harden, 191 Okl. 698, 130 P.2d 311, 314, as quoted in Martin v. Martin, Okl., 350 P.2d 270, 273–274.

It is our opinion that Harden v. Harden, supra, correctly states the rule applicable in this jurisdiction. It is also our opinion that the trial court did not abuse his discretion in the present case by fixing the sum of $50,000.00 as the amount defendant should pay plaintiff as a part of an equitable division of the parties' jointly acquired property, or by ordering said sum paid in the manner he prescribed. It must be remembered that plaintiff invested no money whatsoever in the Tank Lines corporation stock, that its acquisition was made possible by the earnings and success of said corporation, which latter was shown to be largely the result of defendant's efforts and his contacts in a few oil companies with gasoline to be transported by tank trucks. To us, it appears that it might be a distinct hardship upon defendant if he were not allowed to pay this substantial sum of money in monthly installments, especially in view of his testimony (at the last court hearing during which he testified) showing impending hazards to his business's future success.

In support of her contention that her award of alimony in the amount of $300.00 per month for a period of three years is not enough, plaintiff points out that, before the trial, she was granted $650.00 per month in temporary support money; and

she cites a disparity between her alimony award and the one we ordered in Aronson v. Aronson, Okl., 468 P.2d 493. She contends that the monthly payments granted her over the three-year period should have been $650.00 each. In defendant's cross-appeal, he contends that the evidence in this case requires us to reduce the $50,000.-00 he was ordered to pay plaintiff as a part of the property division, and that plaintiff's alimony award is both excessive and unauthorized by law.

■ As to plaintiff's arguments in support of increasing her monthly alimony payments to $650.00 per month, we observe that, when the trial court granted her this amount as temporary support, she had temporary custody of the couple's minor sons; and, as far as we can determine from the record, she then had little, if any, regular monthly income. Now, without custody of the minors, she does not have the expense of maintaining a home for the minors, which was an important consideration in our increasing the alimony award to the plaintiff in Aronson, supra. Without such financial responsibilities in connection with the care of her children, it is our opinion that the amount the trial court allowed plaintiff in this case cannot be held error or an abuse of discretion. And we hold to this view, notwithstanding her evidence about the state of her health at the time of the trial and her evidence as to her expenses for the last two months of 1969. This evidence was not sufficient to make it appear that plaintiff has any permanent disability preventing her from pursuing one of the occupations she has apparently preferred to being solely a homemaker during her marriage. And her list of expenses included substantial items that should not regularly reoccur in the future.

■ We find no merit in defendant's arguments against the respective amounts of money awarded plaintiff as alimony and partial property division. Most of these arguments are directed at plaintiff's "right" to any alimony at all, and appear contemplated to forestall any increase by this Court of either of said amounts, rather than to show that the trial court abused its discretion in awarding them. We cannot uphold defendant's position that since the only statute specifically authorizing the granting of a divorce to both parties (Tit. 12, O.S.1961, § 1275), as was done in this case, contains no mention of alimony, plaintiff's award cannot stand, or that, if it can, its amount must be reduced to such sum as will only prevent her from becoming destitute. We think any question as to the propriety, or correctness, of awarding alimony as well as a share of jointly acquired property to a wife, whose fault is found to be ground for granting her husband a divorce, is sufficiently set at rest by our discussion in Aronson v. Aronson, supra, and particularly by the criteria set forth in Eisenreich v. Eisenreich, Okl., 323 P.2d 723, 725 (therein cited), for awarding alimony. That discussion *specifically* negates defense counsel's statement in their brief that, insofar as they have been able to determine, this Court has never held that where a divorce is granted to both husband and wife, the husband may be required to pay the wife's attorney fees.

This brings us to the matter of the allowance of attorneys' fees for plaintiff's attorneys. As will be recalled, the trial court decreed that defendant pay a fee to plaintiff's attorneys of $5,000.00 (in addition to the $750.00 paid before the trial). In the application, pursuant to which this Court entered its hereinbefore mentioned order of last June, plaintiff's attorneys requested us to allow them the sum of $3,-500.00 as their fee for prosecuting this appeal, and this request is renewed (by reference) in their brief. It is our opinion that the sum of $1,000.00 constitutes a reasonable fee for all of plaintiff's counsel's services in connection with this appeal, and that the remainder of any sum defendant has paid for plaintiff's attorneys' fees un-

der this Court's aforementioned order should be credited against, and deducted from, his accrued indebtedness under the trial court's judgment and decree.

In accord with the foregoing, the decree and judgment of the trial court is hereby affirmed, in respect to the awards of jointly acquired property, alimony, and attorneys' fees therein prescribed, with the qualification, and upon the condition, that there be credited against, and deducted from, the money sums accrued thereunder, any and all sums of temporary support money, and any and all sums of attorneys' fees exceeding $1,000.00, defendant has paid under this Court's order of last June, or that plaintiff may receive from defendant under said order pending issuance of this Court's mandate herein, at which time any and all further obligations of defendant under said temporary order will cease and terminate.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN and LAVENDER, JJ., concur.

HODGES and McINERNEY, JJ., concur in part and dissent in part.

McINERNEY, Justice (dissenting in part):

I concur in the majority opinion except for the additional attorney fee awarded by the opinion to plaintiff for plaintiff's appeal. The appeal taken by plaintiff has been affirmed *in toto*. Defendant has previously paid a $750.00 fee to her first attorney and is obligated to pay an additional $5,000.00 fee to plaintiff's present attorney by the terms of the judgment of the trial court. Plaintiff has received a substantial amount in cash; Defendant has continuing obligations under the decree. I do not believe, under these circumstances, that the Defendant should be charged an additional attorney's fee for plaintiff's appeal. I would award plaintiff's attorney a fee of $1,000.00 for this appeal *to be paid by the plaintiff*.