1998 OK CIV APP 22

1998 OK CIV APP 22

Patti FAVELL, Plaintiff/Appellee/ Counter–Appellant,

v.

John FAVELL, Defendant/Appellant/ Counter–Appellee,

and

Key Temporary Personnel, Inc., Defendant/Appellee,

and

Action Staff, Inc.; Kansas Personnel, Inc., d/b/a Key Temporary Personnel; Labor Source, Inc.; Key Services, Inc.; Business Training Services, Inc., d/b/a Gilbreath's Information Services, Inc.; Hannah's Temporary Personnel, Inc.; and Accounting Principals, Inc., Defendants.

No. 84656.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 31, 1997.

Certiorari Denied Feb. 23, 1998.

Jack R. Givens, Jones, Givens, Gotcher & Bogan, P.C., and Joseph R. Farris and Kristin Blue Fisher, Feldman, Franden, Woodard, Farris & Taylor, Tulsa, for Defendant/Appellant/Counter–Appellee.[1]

Sam P. Daniel and Jon E. Brightmire, Doerner, Saunders, Daniel & Anderson, Tulsa, for Plaintiff/Appellee/Counter–Appellant.

## MEMORANDUM OPINION

ADAMS, Chief Judge:

¶ 1    John Favell (Husband) and Patti Favell (Wife) were, in addition to being spouses, majority stockholders (either in combination or individually) in nine corporations[2] offering temporary employees to businesses. All the corporations were created or acquired after the couple's marriage in 1967. The parties also owned other personal property and several pieces of real property. Both parties have appealed the trial court's orders dissolving their marriage and dividing their property. The issues raised by the parties are limited to challenges to the value and division of the marital assets.

### Divorce and Post–Divorce Proceedings

¶ 2    Wife sued for divorce in April of 1992. Under a temporary order, the corporations were to continue to operate in the ordinary course of business, and the parties were to receive their customary salaries during the pendency of the divorce proceedings. Although there were nine corporations,[3] some operated as separate entities and some as divisions, and the original corporation (hereinafter "Key") provided management and financial services to all the corporations. Husband continued to function as president and chief operating officer of Key, and Wife continued as its treasurer and chief financial officer. After Wife filed for divorce, the subsequent operation of the corporations, though profitable in the aggregate, was far from smooth and rancor-free.

¶ 3    The division of the marital assets and the actions of the parties in conducting the various businesses were the subject of numerous hearings held over several years. In June of 1994, the trial court fixed the value of the marital assets, allowed certain offsets, awarded the parties their separate property, and announced the division of the marital property. Under that order, Husband received real property and Husband and Wife each received tangible personal property and bank accounts, the value and distribution of which is not at issue in this appeal. In addition, Wife received stock in seven corporations, essentially receiving Key, except for Accounting Principals, Inc. and Kansas Personnel, Inc. (a Key subsidiary doing business in Topeka, Kansas), which were awarded to Husband. The trial court imposed a "covenant not to compete" upon Husband and ordered Key to pay Husband $1,185,000 to equalize the property division.

¶ 4    Because of the complexities involved in transferring the corporate assets to the appropriate party, the trial court reserved for future determination certain issues, in-

---

1.  Mr. Givens filed the briefs on the initial appeal. Mr. Farris and Ms. Fisher filed the supplemental briefs on the reserved issues.

2.  The corporations include the eight named as parties plus another, American Driving Force, Inc.

3.  Of those nine corporations, eight are named as defendants. The remaining corporation was formed to provide truck drivers on a temporary basis, but insurance requirements resulted in most of its business being conducted through one of the party defendants.

cluding attorney fees and the credits to be accorded the parties for divorce-related expenses. The trial court also ordered that an accountant review the corporations' records so that appropriate handling of sub-chapter S distributions and taxes could be determined. A decree of divorce memorializing the trial court's June, 1994 property division was filed October 27, 1994.[4]

¶ 5 Wife's motion for reconsideration and clarification was overruled in part in an order filed in January of 1995 in which the trial court modified provisions of the October 27, 1994 decree regarding inter-company indebtedness. In this order the trial court also appointed an accountant to investigate and report on tax matters and ordered that the parties should share equally in any taxes incurred by reason of the award of Accounting Principals assets to Husband and the costs of the accountant. The trial court also stayed the October 27, 1994 decree until January 9, 1995, and granted Wife leave to file for a subsequent stay pending appeal (Husband having previously filed this appeal).

¶ 6 Husband and Wife each transferred stock ownership on February 28, 1995, to effect the property division. Following the stock transfer, Wife was the majority stockholder in Key and in six Oklahoma corporations, and Husband was the majority stockholder in Accounting Principals, Inc., an Oklahoma corporation placing accountants, accounting clerks and computer personnel supporting accounting services, and one out of state corporation which provided temporary employees in many fields. Hearings were conducted in late 1995, and the trial court entered an order addressing the reserved issues in January of 1996. Both parties again moved for reconsideration. The

trial court filed an order denying those motions on January 4, 1997, and both parties amended their appeals to include aspects of the trial court's disposition of the reserved issues.

## Non–Competition Provisions and Valuation

¶ 7 It is quite clear from a review of the record that the value of the corporations is inextricably tied to the imposition of a provision identified by the parties as a "covenant not to compete" or "non-competition order" which prevented Husband from competing with the corporations awarded to Wife. Experts who testified on the issue opined that the value of the corporate interests could be diminished by ten or even forty per cent without such a non-competition provision limiting Husband's post-divorce activities.

¶ 8 When announcing the property division on June 14, 1994, the trial court said: "There clearly would be a diminution in value were the Court not to order a covenant not to compete," and "the Court is convinced that a covenant not to compete in this particular case and under this particular set of facts and circumstances is necessary to protect and ensure the Court's award today." Hence, the equity of the property division also is tied to this provision because the values attributed to some of the assets assigned to Wife are affected by the existence or non-existence of such a provision.[5]

¶ 9 At the outset, it must be noted that the Non–Competition Order filed October 27, 1994, though internally containing a reference to "this covenant," is not a covenant against competition. By definition, a covenant is an agreement. Although the parties

---

4. Husband filed this appeal in November of 1994, arguing the trial court erred in the allocation of property and the imposition of a non-competition order, but that petition in error pre-dated the trial court's determination of all issues in this matter. Wife moved to dismiss the appeal, a decision on which was deferred to the decisional stage. After initial briefing, the case was assigned to this Court, and we asked the parties to address whether an appealable event, i.e, the issuance of an injunction, had occurred. The parties responded and noted that resolution of the reserved issues was imminent. Because any interlocutory appeal by right of the injunc-

tion order was intertwined with the merits of others issues, we stayed proceedings to allow resolution of the reserved issues. Following disposition of the reserved issues, the parties supplemented the record and, upon their request and with the Court's leave, addressed the reserved issues in a supplemental briefing schedule completed on November 18, 1997.

5. The assets awarded Husband are not similarly affected because their value was not dependent upon a lack of competition by Wife.

agreed that a non-competition provision might be desirable to preserve the value of marital assets, they did not come to an agreement on any particular terms. There being no agreement not to compete by these parties, the provisions at issue are merely a court-imposed obligation in the nature of an injunction against competition "to protect the goodwill of the business" and thereby preserve the value of certain corporate assets, not a covenant not to compete.[6]

¶ 10 In this regard, at the June 14, 1994 hearing announcing the division of the parties' separate and marital property, the trial court stated:

> Based upon all of the testimony submitted by both sides, this Court determines that the goodwill component and the overall evaluation of the business has been considered and is essential to the valuation of these businesses. This Court adopts the position that the noncompeting party is precluded from claiming a right to be separately compensated for the restriction placed on him by the covenant not to compete today. Through the evaluations of the expert in this case, their testimony and the findings of fact, the Defendant in this case is simply getting his share of the goodwill in the total evaluation picture effectuated by the covenant not to compete. This Court specifically rejects Mr. Givens' eloquent argument in support of his position that the Defendant is entitled to compensation for executing his covenant not to compete in addition to his division of the

marital estate. This is not a third-party sale. It is a division of the marital estate.

■■■ ¶ 11 Although the award of a permanent injunction is matter of equitable concern, an injunction is an extraordinary remedy that should not be lightly granted, and then only when clear and convincing evidence shows a need therefor. *Jackson v. Williams*, 1985 OK 103, 714 P.2d 1017, 1020. The grant of a permanent injunction is a matter of equitable cognizance and on review we are bound neither by the reasoning of the trial court nor by its findings but may examine the whole record and consider and weigh all the evidence. *Public Service Company of Oklahoma v. Home Builders Association of Realtors, Inc.*, 1976 OK 120, 554 P.2d 1181.

¶ 12 Husband contends the imposition of such an injunction is contrary to Oklahoma's clearly expressed policy limiting restraint of trade to tightly circumscribed circumstances.[7] Under that policy, expressed in 15 O.S.1991 § 217, "[e]very contract by which one is restrained from exercising a lawful profession, trade or business of any kind, *otherwise than as provided by Sections 218 and 219 of this title*, is to that extent void." (Emphasis added). Sections 218 and 219 of Title 15 limit restraints of trade to situations where, respectively, the seller of the goodwill of a business or partners upon or in anticipation of dissolution of a partnership *"agree"* to refrain from carrying on a business within geographically specified (and statutorily limited) parameters.

---

**6.** The Non–Competition Order entered June 14, 1994, as memorialized in a filing on October 27, 1994, recites that the court found "that to insure the efficacy and integrity of property division award of the capital stock of certain of the Defendant corporations to [Wife] in consideration of the award to [Husband] of certain real and other property and a cash judgment in his favor against [Wife] for $1,000,000, the Court should order [Husband] not to compete with said corporation in the following particulars for the following consideration to be paid to [Husband] by [Key]." The order prohibits Husband from engaging in "temporary personnel services, outsourcing and/or permanent placement services" and from engaging in certain conduct with customers, employees of the corporations awarded to Wife for sixty months and with former employees of the corporations awarded to Wife for nine months. The sixty month provisions did not apply "to employees of accounting department,

and other professional positions (accounting or non-accounting) or business positions that support accounting departments which have been historically serviced by the Accounting Principals division of [Key]," and the non-hire provisions for former employees did not apply to former employees of Accounting Principals.

**7.** Wife's argument that Husband may not raise this on appeal because it was "invited error" is not substantiated by the record. Although Husband suggested various terms of a covenant not to compete which he might be willing to accept, he never abandoned his clearly stated position that such a "covenant" could not be imposed absent the agreement of the parties. After the evidence was presented, Husband repeated this position in his brief filed with the trial court prior the trial court's decision in June of 1994.

¶ 13 Despite the existence of general public policy favoring freedom of individuals to contract, with these sections, the Legislature has adopted a public policy so disfavoring restraints of trade that it limits that freedom and prevents parties from "agreeing" to restraints of trade except under limited circumstances. We are loathe to judicially expand those circumstances to include restraints of trade to which the parties have not agreed.

¶ 14 Wife cites decisions from other jurisdictions which allowed one party to be prevented from pursuing a profession in which both the divorcing spouses had engaged,[8] but no case is called to our attention in this jurisdiction which allows such a non-consensual restraint of trade. In our view, the reasoning in those cases fails to give sufficient weight to the superior role which the statutory enactment process must occupy in expressing public policy.

¶ 15 We find no authority which persuades us the trial court was free to pick and choose among proposals by the parties to fashion a restriction upon the exercise of a lawful profession. Such a restriction should not be imposed merely because both parties in a divorce have the same profession and it would be more convenient for one of them to be relieved of competition from the other and it would make an asset awarded more valuable, absent other circumstances such as an immediate threat of injury to a *legally cognizable right* or the inadequacy of damages for *unlawful* acts. Most businesses and professions would welcome a lessening of competition, but the restraint of a lawful trade to produce that end is strongly disfavored.

¶ 16 The imposition of such a non-competition order violated another general principle applicable in divorce cases. It is well settled that the future earning capacity of either spouse in a divorce case is not marital property to be divided. *Mocnik v. Mocnik*, 1992 OK 99, 838 P.2d 500. According to the

evidence, the existence of a non-competition order or agreement restricting Husband's activities increased the value of the marital corporate assets by ten to forty percent. The higher marital value is at the expense of Husband's right to pursue his chosen line of work, *i.e.* his future earning capacity. By including in the marital estate the value directly attributable to a restriction on Husband's future earning ability, the trial court treated at least a portion of Husband's future earning capacity as marital property and awarded a portion of the value of that capacity to Wife.

¶ 17 The order imposing a "covenant not to compete" upon Husband must be reversed as contrary to law and public policy. Because the value placed upon the corporations awarded Wife was dependent upon the existence of a non-competition provision, this matter must be remanded for a new determination of the value of the corporations and, in light of those values, what judgment may be required to yield an equitable division of the marital assets.[9]

¶ 18 Accordingly, the judgment to Husband must also be reversed because it was predicated upon the value assigned to the corporations awarded Wife, and we need not address Husband's argument that the court erred in requiring Key to pay that judgment rather than Wife. Further, finding no lawful basis for the non-consensual imposition of a non-competition order against Husband, we must reject Husband's *alternative* argument that the trial court abused its discretion by not imposing non-consensual restrictions upon Wife as regards the business activities of the corporations awarded to Husband.

### Charges, Credits and Offsets

¶ 19 As a part of the temporary order, the parties were allowed to draw interest-bearing advances from the corporations to pay the attorney fees and costs incurred in

---

8. Wife cites *Marriage of Fischer*, 834 P.2d 270 (Colo.App.1992); *Lord v. Lord*, 454 A.2d 830 (Me. 1983); and *Carr v. Carr*, 108 Idaho 684, 701 P.2d 304 (Idaho App.1985).

9. Should the parties enter into a consensual covenant not to compete which complies with 15

O.S.1991 § 217–219, the trial court may surely take that factor into account when entering its new judgment, and nothing herein should be construed to prohibit the parties from taking such a voluntary step.

connection with the divorce proceedings and "such advances will be charged against the parties' ultimate share in the division of the marital estate." In the October 27, 1994 decree, the trial court also made provision for certain offsets and left for later determination the offset and payment of various inter-company expenses and charges arising from company operations and the division of the nine corporations between the parties and for an allocation of taxes between the parties arising because of the division of the corporations between them.

¶ 20 In determining these issues, the trial court did not enter specific findings on each item Wife claims should be charged to Husband. Instead, in a January 23, 1996 order entered after a November 1, 1995 hearing, the trial court found that after applying charges and expenses, Wife owed $628,293 of the $1 million dollars awarded Husband and that Husband should be paid $20,000 in salary per month by Key until that balance had been satisfied. In January of 1997 the trial court denied Key's motion to reconsider and vacate the monthly payments, Wife's motion to reconsider and vacate the January 23, 1996 order, and Husband's motion to reconsider.

¶ 21 In announcing its conclusions on November 17, 1995, the trial court gave the parties a more detailed explanation about the charges and expenses allowed and considered than that memorialized in the journal entry. The trial court stated the net amount due if Wife's figures were used and the net amount due if Husband's figures were used, then exercising its equitable powers, determined a figure for credits, charges and offsets which fell in between.

¶ 22 Wife argues the trial court should have entered detailed findings and conclusions concerning each item of offset and credit which she requested. However, she made no request for such findings and conclusions under 12 O.S.1991 § 611 and thereby waived the right to complain of a lack of more detail in the judgment entered. The trial court had before it voluminous and detailed exhibits listing the items and amounts Wife claimed should be charged against any award to Husband. The trial court also heard testimony and had before it other exhibits rebutting her claims that certain charges were allowable against Husband's share of the marital estate.

¶ 23 Wife's arguments for something approximating a bookkeeper's strict numerical equivalency in the property division must be rejected. It is a just and equitable, not equal, division of marital property which is required. *Wood v. Wood*, 1990 OK CIV APP 49, 793 P.2d 1372. An action for divorce and division of property, being one of equitable cognizance, the judgment of the trial court will not be disturbed on review by this court unless it be clearly contrary to the weight of the evidence. *Longmire v. Longmire*, 1962 OK 219, 376 P.2d 273. Further, the trial court has wide latitude in determining what part of jointly acquired property shall be given to each party. *Phillips v. Phillips*, 1976 OK 165, 556 P.2d 607.

The parties presented the trial court with what may charitably be termed a careful and exhaustive analysis of the personal and business purposes of the credits, offsets, intercompany debts, and loans. After review of the record, we cannot conclude the credits, charges and offsets against the property ultimately awarded the parties is clearly against the weight of the evidence, an abuse of discretion or contrary to law. Accordingly, the trial court's order must affirmed in this regard.

### Valuation Date

¶ 24 Husband also argues that it was error to set the date for valuation of the corporate assets in December of 1992, because his efforts as chief operating officer after that date added value to those assets. The trial court has discretion in choosing the appropriate date for valuation of assets after consideration of all circumstances. *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925. Nevertheless, we must conclude that, given the protracted period of litigation, it was an abuse of discretion to award the entire increase in corporate value produced through the efforts of Husband and Wife as corporate officers to Wife without any corresponding compensation to Husband. The

record reflects that distributions for the tax effect of the increase in profits were made to the parties and that Husband and Wife each received their normal salary, but there is no evidence in this record that Husband received any other portions of the profit earned by Key between December of 1992 and the date when Husband ceased rendering his services, which, according to Husband's evidence, exceeded one million dollars. Upon remand the trial court must consider the increased value of the corporations during that period as part of the marital estate.

### Corporate Assets Transferred to Husband

■ ¶ 25 Wife argues we should reverse the trial court's transfer of assets of Accounting Principals from Key to Husband. We disagree with her analysis. Ordinarily the trial court would not have jurisdiction over a corporation in a divorce action, but this case is far from the ordinary divorce. Although it might be a better practice to address directives in divorce actions only to the divorcing spouses and to order those spouses to take the steps necessary to fulfill a judgment, it was Wife who named the corporations as party defendants, not Husband, and any misjoinder is thus at her own invitation. The trial court had jurisdiction over these corporate defendants and any error in the phrasing of the judgment was theirs to raise, not Wife's. The corporate defendants did not appeal, and we will not further consider this issue.

### Conclusion

¶ 26 The value of assets other than the corporations is not the object of this appeal and are, therefore, undisturbed. However, as to the parties' interest in the nine corporations which are part of the marital estate, the trial court's order is reversed and the matter is remanded for entry of an order in accordance with the opinions expressed here which will effect a just and equitable division, taking into account the value of the assets and all the payments heretofore received by these parties.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

JONES, P.J., and GARRETT, J., concur.