2006 OK CIV APP 5

**W. LEMONS, Plaintiff/Appellee,**

v.

**A. LEMONS, Defendant/Appellant.**

No. 100,742.

Court of Civil Appeals of Oklahoma,
Division No. 2.

Dec. 27, 2005.

Richard T. Garren, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, OK, for Plaintiff/Appellee.

E. Clifton Baker, Tulsa, OK, for Defendant/Appellant.

Opinion by DOUG GABBARD II, Judge.

¶ 1 In this divorce action, defendant Charlotte Lemons (Wife) appeals the trial court's decisions regarding property division and alimony. Based on the record and applicable law, we affirm.

## FACTS

¶ 2 Wife and plaintiff Fred Lemons (Husband) were married in 1985. There are no children of the marriage. The parties separated in late 1999, and Husband filed for divorce in 2000. The trial court entered a temporary order in 2000. The divorce did not become final until 2004.

¶ 3 The 2000 temporary order required Husband to pay Wife $1,400 monthly support alimony and an additional $300 for household expenses. He was also required to make the mortgage payments on the family home, pay $40,000 of Wife's attorney's fees, and make various other payments for items such as utilities, gasoline, and insurance. Husband made all required payments for three and a half years before the final decree was entered. Husband's expert testified these payments totalled $355,000.

¶ 4 The evidence at trial established that Husband is a home builder specializing in custom homes costing about half a million dollars; Wife is an interior designer. The trial court placed Husband's annual income at $90,000 (finding he had only completed and sold a few homes in recent years) and hers at $10,000. Following the separation, the trial court added six businesses as parties, with Wife asserting these were new or successor businesses that were part of the marital estate.

¶ 5 The trial court divided the property as follows: Husband received his home building company and other businesses, some related to home building; various financial accounts, including half of a profit sharing account; and various personal items. Wife received her interior design business; a Broken Arrow property built by the home building company for Wife's parents, valued at $136,000 and subject to a $98,962 line of credit which the trial court ordered Husband to pay; other financial accounts, including the other half of the profit sharing account; and personal items. The trial court ordered the sale of several properties, including the marital home, with the profits to be divided between the parties.

¶ 6 The trial court also awarded Wife $95,000 in alimony. However, the trial court offset this amount by crediting Husband for some of the payments he made to Wife under the temporary order, including payments for temporary alimony and portions of the mortgage. The Court based this decision on the grounds that Wife had failed to justify her need for the 2000 alimony award and had failed to fully divulge the income derived from her own interior design business, and that the temporary alimony award should have taken into account the additional benefit Wife received from living in the marital home rent-free during the period between the separation and divorce.

¶ 7 Wife appeals.

## STANDARD OF REVIEW

¶ 8 An action for divorce, alimony, and division of property is one of equitable cognizance, and the trial court's judgment will not be disturbed on appeal unless found to be clearly contrary to the weight of the evidence. *Carpenter v. Carpenter*, 1983 OK 2, ¶ 24, 657 P.2d 646, 651.

## ANALYSIS

### 1. Property Division

¶ 9 Wife first asserts the trial court erred by valuing the marital estate as of the date of the decree in 2004, instead of the date of separation, almost four years earlier. The parties agree that using the later date results in a smaller total value of the marital estate, because the value of some of the marital assets decreased during this time. Husband asserts this was due to a general downturn in the custom home business. Wife asserts this was due to Husband dissipating assets by transferring equity to new businesses and incurring debt on some pre-existing businesses.

¶ 10 Title 43 O.S.2001 § 121 requires a property division to be "just and reasonable." In making an equitable division of property in a divorce action, a trial court is vested with wide discretion, and it must clearly appear that the trial court abused its discretion before its decision will be reversed. *Manhart v. Manhart*, 1986 OK 12, ¶ 45, 725 P.2d 1234, 1240. Beyond that, it is often said that the trial court is in the best position to determine the exigencies of any particular case concerning a division of marital property. *Carpenter* at ¶ 24, 657 P.2d at 651.

¶ 11 In addition, the trial court has discretion in determining the cut-off time for the valuation of marital assets. In *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925, the Oklahoma Supreme Court adopted a flexible approach in which the date of valuation is to be determined by the trial court after due consideration of all the circumstances of a case. *Id.* at ¶ 16, 890 P.2d at 933. That case involved the valuation of a retirement fund. The husband wanted to use the date of separation; the wife wanted to use the higher date of trial. The Supreme Court approved use of the trial date.

¶ 12 More recent cases have applied this rule with varying results. In *Bond v. Bond*, 1996 OK CIV A PP 3, 916 P.2d 272, after noting it had been three years between the separation and the divorce, the Court of Civil Appeals affirmed the trial court's use of the separation date for valuation purposes. However, in *Dorn v. Heritage Trust Co.*, 2001 OK CIV APP 64, 24 P.3d 886, the Court affirmed the trial court's decision to use the trial date for valuation purposes. Most instructive is *Favell v. Favell*, 1998 OK CIV APP 22, 957 P.2d 556, where the Court held it was an abuse of discretion to use a valuation date that allowed the wife to receive the entire increase in corporate assets, even though the husband continued working in the business (after the divorce was filed) during the period the value increased. *Id.* at ¶ 24, 957 P.2d at 562–63. The Court viewed this increase as part of the marital estate. *Id.*

¶ 13 We see no reason why the same logic should not be applied when the value of the marital assets decrease through no fault of a party. In this case, the trial court determined that the decrease in value was due to market fluctuations, not dissipation by Husband. This finding is not against the weight of the evidence. Moreover, we are unable to conclude from the record that the delay in

reaching a final decree in this case was primarily due to any action by Husband.

¶ 14 Wife also asserts the trial court erred in its division of the marital estate. Much of her argument is based on how much she contributed to Husband's business. This argument is beside the point. The general rule is that the trial court should not consider how much either party contributed to the purchase of jointly acquired property, because a gift from one party to the other is presumed. The exception is in cases of fraud or special agreement. *Shackelton v. Sherrard,* 1963 OK 193, 385 P.2d 898.

¶ 15 According to Wife's figures, Husband received $378,000 in "identifiable value" from the marital estate, plus the assets of five or six active businesses, while she received $208,000 of value. Wife was ordered to pay $21,000 in credit card debt, while Husband was ordered to pay $32,000 in business debts and assume responsibility for almost $165,000 in two lines of credit, partially going to the home built for Wife's parents. Given the various factors presented by the parties and considered by the trial court, we cannot say the total award is inequitable.

### 2. Alimony

¶ 16 The trial court awarded Wife $95,000 in alimony, but offset almost the entire amount by crediting Husband for payments made under the temporary order, which remained in effect for three and a half years. Wife asserts she is entitled to another year of support, at the same level of support she received during the temporary order.

¶ 17 Alimony is based upon a number of factors. These include: demonstrated need during the post-divorce economic readjustment period; the parties' station in life; the length of the marriage and the ages of the spouses; the earning capacity of the parties as well as their physical condition and financial means; the accustomed style of living of the parties; evidence of a spouse's own income-producing capacity; and the time needed to make the post-divorce transition. *Younge v. Younge,* 2002 OK 12, n. 21, 41 P.3d 966, 971.

¶ 18 Wife's argument ignores these factors. In fact, the record supports the trial court's conclusion that the temporary alimony was greatly in excess of Wife's demonstrated need. Although Wife argues that Husband received some benefit for these payments, such as tax deductions for interest payments, she does not dispute the trial court's finding that the temporary alimony was in excess of her demonstrated need. A review of the record indicates no abuse of discretion by the trial court in finding that there was an overpayment of temporary alimony, in determining future alimony, or in offsetting the pre-divorce overpayments against the future alimony. *See Spann v. Spann,* 1992 OK CIV APP 150, ¶ 10, 852 P.2d 826, 829. We reject Wife's argument.

### CONCLUSION

¶ 19 Accordingly, the trial court's decision is AFFIRMED.

REIF, P.J., and WISEMAN, J., concur.