2011 OK 17

**In re the Marriage of Elizabeth A. HUTCHINGS, Petitioner/Appellant,**

v.

**Dean M. HUTCHINGS, Respondent/Appellee.**

**No. 105,981.**

Supreme Court of Oklahoma.

March 8, 2011.

Donna J. Priore and Randal D. Morley, Birmingham, Morley, Weatherford & Priore, P.A., Tulsa, OK, for Petitioner/Appellant.

James R. Elder, Fry & Elder, Tulsa, OK, for Respondent/Appellee.

REIF, J.:

¶ 1 The issues presented on certiorari review are whether the trial court considered the relevant factors under Oklahoma law for determining an appropriate amount of support alimony, and whether the trial court's award of support alimony is supported by the evidence. We hold that the court's award of support alimony was insufficient and an abuse of discretion.

¶ 2 Elizabeth Hutchings (wife) and Dean Hutchings (husband) were married on March 12, 1983. At the time of the marriage, both parties had a high school diploma. The wife was twenty years old, pregnant, and working as a nurse's aide. The husband was twenty-one and working for a manufacturing company. The parties did not own any real property.

¶ 3 The couple's first child was born in August 1983, and three more children were born of the marriage in August 1985, July 1987, and January 1989. The wife quit her job as a nurse's aide when she began having health problems with the first child. By a joint decision of the parties, the wife continued to stay home and to take care of the children until they were older. The wife was the primary caretaker of the children for approximately sixteen years of the twenty-two year marriage.

¶ 4 In July 1998, the wife began working part-time as a birth certificate clerk at St. John Medical Center, and continued to care for the parties' children. By the time of trial, she had held that job full time for four years, earning $22,927.93 in 2007. She is at the top amount she can earn for that position, with no opportunity for advancement.

¶ 5 At trial, the wife testified that she did not earn enough to support herself. Even with the husband's $900 contribution, at the time of trial she had a shortfall of around $1,200 per month. She used money from her savings, from what she had left from the sale of the rental house, to cover her expenses. When she has to add expenses such as health insurance, she estimated that the shortfall would be around $1,825 per month. She testified that she wanted to become self-supportive by obtaining a master's degree in social work in which she would earn $35,000 to $39,000 per year. She started part-time classes at junior college in January 2008, and estimated that her college expenses would be a total of $23,850 over five years.

¶ 6 After seven years at the manufacturing company, the husband began working for American Airlines. He started out painting planes and worked his way up to crew chief, earning over $70,000 per year at the time of trial. The husband also earned extra income, generally in cash, through independent

painting and construction jobs. The husband testified that in 2007 he received cash in the amount of $4,500 for three painting jobs, and a W–2 showed he earned $1,200 from U.S. Medical. The husband also acquired a pension and a 401(k) plan at American Airlines, and flying benefits.

¶ 7 After the birth of their first child in 1983, the parties purchased an unfinished house and five acres. It took fourteen to fifteen years to complete the house, with the wife helping with some of the physical labor to finish it. The house was sold shortly after its completion, and the parties then built a second home where they lived for about five years. The parties then moved into a lakefront home, where they lived until separation. The house was 2,100 square feet, with a private boat dock and access to a swimming pool and tennis court. At the time of separation, the parties also owned a rental house and a vacant lot, and each party had a vehicle.

¶ 8 The parties separated on July 17, 2005, after twenty-two years of marriage. The husband moved out of the marital residence and began living with another woman. Two minor children, and one child who had aged out, continued to live with the wife. Following the separation, the wife moved into a one-bedroom apartment, and she plans to purchase a home about half the size of the prior marital residence with her half of the proceeds from the sale of the marital home. She believes she can only afford a house in the range of $75,000 to $85,000.

¶ 9 The husband purchased a newly built, 1,600 square foot home after the separation, with a purchase price of $159,000. He paid $34,000 in cash as a down payment from his $40,000 sales proceeds from the sale of the marital residence. He travels monthly, often accompanied by his girlfriend, both domestically as well as to Jamaica, Switzerland, and Australia.

¶ 10 On September 13, 2005, the wife filed for divorce. The parties entered into a partial temporary order in October 2005, whereby the wife was granted temporary custody of the minor children and the husband was ordered to pay $931.26 per month in child support. Later that month, the parties entered into an agreed temporary order whereby the wife retained custody of the minor children, and the husband was ordered to pay the wife $2,000 per month as a combination of temporary child support and temporary payment of jointly acquired indebtedness. After the sale of the rental property, the husband began paying the wife $1,800 per month as the combined payment of child support and jointly acquired debt. Then, following the aging out of the youngest child in June 2007, the husband paid the wife $900 per month without a court order until trial.

¶ 11 The divorce was granted in March 2008. The parties had resolved all issues by the time of trial except for support alimony and payment of the joint 2006 taxes. The wife had requested $2,200 per month support alimony for five years, for a total of $132,000, in order to pursue the social work degrees. The wife requested that the husband be ordered to pay the parties' 2006 joint taxes of $2,678, which were incurred based on the sale of the rental house and the husband's sale of American Airlines stock. The husband argued that he should not have to pay the wife any support alimony and that she should pay her share of the taxable gain on the rental property. He also requested credit for monies he had paid to the wife under the agreed temporary order.

¶ 12 The trial court awarded her $250 per month for three years, for a total of $9,000 in support alimony. The Court of Civil Appeals affirmed, stating that "[w]hile the facts of this case might have supported a higher amount of support alimony, we cannot say the award was *against all reason.*" (Emphasis added.) The appellate court noted that there will be a significant earning disparity between the husband and wife. The appellate court also stated that "Wife agreed that she was asking for $23,800 for reimbursement of tuition for undergraduate and graduate degrees, but if she chose to change her profession to nursing, that would have been free through a program at St. John's, except for owing St. John's two-years of employment at $18 per hour. Wife was adamant about not wanting to be a nurse." (Footnote omitted.)

¶ 13 The wife sought certiorari on the grounds that the court not only failed to apply the relevant factors to this case, but wrongfully read the record to conclude that if the wife chose to change her profession to nursing, it would have been free through a program at St. John Hospital. The wife states that the record does not support that she would receive a free education, but only minimal tuition assistance in a field she did not wish to pursue. She avers that when parties divorce, there is no precedent to force an occupation chosen by the husband on the wife.

¶ 14 In divorce actions, the trial court is vested with wide discretion in awarding alimony.[1] On appeal, the court will not disturb the trial court's judgment regarding alimony absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence.[2]

¶ 15 Alimony is an allowance for the maintenance of a party.[3] In awarding alimony, although each case depends on its own facts and circumstances,[4] the amount must be reasonable.[5] Oklahoma defines support alimony as a need-based concept, with a purpose of cushioning the economic impact of the post-marriage transition and readjustment to gainful employment.[6] Demonstrated need is shown by the totality of proof of the spouse's financial condition.[7]

¶ 16 Support alimony is based on a consideration of relevant factors including: demonstrated need during the post-divorce economic readjustment period; the parties' station in life; the length of the marriage and the ages of the spouses; the earning capacity of the parties as well as their physical condition and financial means; the accustomed style of living of the parties; evidence of a spouse's own income-producing capacity and the time needed to make the post-divorce transition for self-support.[8]

¶ 17 In *Durland v. Durland*, 1976 OK 102, 552 P.2d 1148, the court increased an alimony award from $36,000 to $48,000 where the parties had been married nineteen years, the wife earned a minimal income and was not trained for any particular employment, and one of the children required special care. Also, in *Peyravy v. Peyravy*, 2003 OK 92, 84 P.3d 720, the court determined that a trial court's award of support alimony in the amount of $24,000, was insufficient where the parties had been married for twenty-two years, the husband had supported the family, the husband's average monthly income paid by the family's corporations was $9,100, and the wife's health inhibited her ability to work full time outside the home. The *Peyravy* court noted that in *Mocnik v. Mocnik*, 1992 OK 99, 838 P.2d 500, the court increased an alimony award from $60,000 to $120,000 where the parties had been married for eighteen years, the husband earned $215,000 a year, and the wife had an earning capacity of $20,000. Moreover, in *Aronson v. Aronson*, 1970 OK 74, 468 P.2d 493, the court increased an alimony award of $60,500 to $90,750 where the parties had been married for fifteen years, the husband was a doctor earning $60,000 a year, and the wife worked as a substitute elementary school teacher, earning only $500 per month. The *Peyravy* court further noted that in other cases with similar circumstances, the court refused to

1. *Peyravy v. Peyravy*, 2003 OK 92, ¶ 20, 84 P.3d 720, 725; *McLaughlin v. McLaughlin*, 1999 OK 34, ¶ 12, 979 P.2d 257, 260.

2. *Id.* The appellate court's finding that "we cannot say the award was against all reason" was not a proper statement of the standard of review.

3. *Whitehead v. Whitehead*, 1999 OK 91, ¶ 5, 995 P.2d 1098, 1100.

4. *McLaughlin*, 1999 OK 34, ¶ 13, 979 P.2d 257, 260; *Durland v. Durland*, 1976 OK 102, ¶ 5, 552 P.2d 1148, 1149.

5. *Whitehead*, 1999 OK 91, ¶ 5, 995 P.2d 1098, 1100; *McLaughlin*, 1999 OK 34, ¶ 13, 979 P.2d 257, 260; *Fisher v. Fisher*, 1976 OK 193, ¶ 3, 558 P.2d 391, 392.

6. *Ray v. Ray*, 2006 OK 30, ¶ 10, 136 P.3d 634, 636.

7. *Id.*

8. *Peyravy*, 2003 OK 92, ¶ 14, 84 P.3d 720, 723; *Younge v. Younge*, 2002 OK 12, ¶ 14, n. 21, 41 P.3d 966, 971; *McLaughlin*, 1999 OK 34, ¶ 13, 979 P.2d 257, 260–61.

reduce awards of support alimony which were significantly more than $24,000.[9]

¶ 18 Here, the parties had been married for over twenty-two years when they became separated, and the husband's income was more than three times that of his wife. The evidence indicates that the wife's current income potential is insufficient to meet her meager living expenses. She has no opportunity for advancement without additional education and training, and her educational and training goals are reasonable under the circumstances,[10] allowing her to increase her income potential. The parties' earning capacities are significantly disparate. The trial court's award of $250 per month leaves the wife with a substantial shortfall every month, even with her living in a one-bedroom apartment. The husband, by contrast, enjoyed a lavish lifestyle during the separation. The wife has a clearly-demonstrated need for more income during the post-matrimonial economic readjustment period.

¶ 19 The amount awarded by the trial court does not provide the wife with the necessary opportunity for post-marital economic readjustment. The trial court failed to properly consider the appropriate factors under Oklahoma law for setting support alimony. Based on the length of the marriage, the ability of the husband to pay, the needs of the wife for living expenses and education, and her current income potential, the trial court's support alimony award of $9,000 to wife was insufficient and an abuse of discretion. Divorce cases are of equitable cognizance, and this Court ordinarily orders the disposition the trial court should have made.[11] We therefore re-calculate the support alimony to award the wife $1,500 per month for 36 months, for a total of $54,000. The trial court's support alimony award is reversed and the matter is remanded with instructions to enter a support alimony award of $54,000, payable at $1,500 per month for 36 months.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF THE TRIAL COURT REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

¶ 20 ALL JUSTICES CONCUR.

---

9. *Peyravy*, 2003 OK 92, ¶ 17, n. 14, 84 P.3d 720, 724.

10. The wife's choice of an educational endeavor should not be limited to the pursuit of a nursing degree, as chosen by the husband, where her unequivocal testimony was that she did not want to be a nurse.

11. *Barnett v. Barnett*, 1996 OK 60, ¶ 8, 917 P.2d 473, 476; *Evans v. Evans*, 1993 OK 59, ¶ 5, n. 12, 852 P.2d 145, 148.