METCALF v. METCALF



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:METCALF v. METCALF

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 METCALF v. METCALF
2020 OK 20
Case Number: 115743
Decided: 04/14/2020
As Corrected: April 27, 2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 20, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



LEWIS R. METCALF, Petitioner/Appellee,
v.
BONNIE L. WATSON METCALF, Respondents/Appellant.

CERTIORARI TO THE COURT OF CIVIL APPEALS DIVISION II
Honorable John E. Herndon, Trial Judge

¶0 After the petitioner/appellee, Lewis Metcalf, transferred some of his separate, real property into the name of his wife, the respondent/appellant, Bonnie Watson Metcalf, he filed for divorce. When it came time to divide their property, the husband claimed this particular real property as his separate property, even though it was now held only in his wife's name. His explanation for placing the property into his wife's name was that he was trying to avoid creditors potentially collecting on a judgment in a lawsuit to which he was a party. The trial court determined that the property in question was his separate property, and divided the couple's remaining marital property, and denied support alimony. The wife appealed, and the Court of Civil Appeals affirmed. On certiorari, we hold that: 1) the presumption of an interspousal gift may not be overcome with evidence that the sole purpose for the transfer was to defraud creditors; 2) the trial court did not err in denying the wife support alimony; and 3) each party is responsible for their own appeal related attorney fees and costs.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED AND CAUSE REMANDED.

Scott A. Hester, Edmond, Oklahoma, for the Appellant.
Cindy Allen, Julia Mills Mettry, Joshua Simpson, Norman, Oklahoma, for the Appellee.


KAUGER, J.:
¶1 We granted certiorari to address the first impression question of whether the presumption that the intent of an interspousal transfer of real property constitutes a gift may be rebutted when the admitted purpose of the transfer was to illegally elude any creditor's attempts to collect on a judgment. We hold that it may not be rebutted by such evidence. We also hold that: 1) the trial court did not err in denying the wife support alimony; and 2) each party is also responsible for their own attorney fees.
FACTS
¶2 In the spring of 2001, the petitioner/appellee, Lewis R. Metcalf (Metcalf/husband), married the respondent/appellant, Bonnie L. Watson (Watson/wife). The couple cannot agree as to the actual date of the marriage which occurred in Arkansas.[1] The couple made their rural home together in Grady County, Oklahoma, and did not have any children together.
¶3 At the time of the marriage, the husband owned and operated a carpentry shop business called Woodmaster, LTD. It was established in 1999, but he made the wife 1% owner during the marriage. In 2009, Woodmaster's creditors filed an action in the District Court of Oklahoma County, seeking to collect on debt Woodmaster's owed. Concerned that the creditors would take his real property to collect on a judgment, the husband deeded the Woodmaster property, and others, to his wife, using her maiden name of Bonnie Watson.[2] He readily admits, and it is undisputed, that his purpose for deeding the property was purely to prevent creditors from recovering any judgments against the shop business. He even visited a lawyer to seek advice on how to handle the property transfer to avoid a creditor's judgment, should one occur.
¶4 During the marriage, their marital home was destroyed by fire, affected by an earthquake, and also destroyed by a tornado. Consequently, various insurance claims were filed, insurance payouts were made, and rebuilding occurred. However, according to the parties, the date of separation impacted who was entitled to various insurance proceeds and lawsuit settlements which occurred during the marriage. Naturally, the date of their separation was also disputed.
¶5 According to the husband, they separated in June of 2011, because they were no longer living together, or even in the same state. According to the wife, they were not separated until December of 2014, when she learned that he no longer wished to be married to her. On December 19, 2014, the husband filed for dissolution of marriage in the District Court of Grady County, Oklahoma. The wife filed a response and cross-petition on December 30, 2014, seeking support alimony.
¶6 The cause proceeded to trial on September 22-30, 2016. At the conclusion of the trial, the trial court issued a Decree of Dissolution of Marriage on January 4, 2017, dividing real and personal property including household items, bank accounts, vehicles, various insurance and lawsuit proceeds and settlements. Among the trial court's findings were the determinations that: 1) the parties' separation date was June 4, 2011; 2) the separate real property, which the husband transferred to the wife during the marriage to elude creditors, was void and thus his separate property; and 3) the wife's request for support alimony should be denied.
¶7 The wife appealed on February 3, 2017, arguing that the husband's transfer of real property to avoid creditors should be considered marital property, because he failed to rebut the presumption of a gift. She also disputed the date of separation, and the denial of support alimony. On July 12, 2019, the Court of Civil Appeals, Division II, affirmed the trial court. On August 1, 2019, the wife filed a Petition for Certiorari in this Court arguing that because the husband transferred the property he owned prior to marriage to avoid potential creditor judgments against him (a/k/a a fraudulent transfer), he is precluded from using the reason for the transfer to rebut the presumption that the transfer was an interspousal gift. She also contends that the trial court erred in denying her support alimony.[3] The husband seeks appeal related attorney fees and costs. We granted certiorari on January 6, 2020, to address these issues.
I.
THE PRESUMPTION OF AN INTERSPOUSAL GIFT MAY NOT BE REBUTTED BY EVIDENCE THAT THE SOLE PURPOSE FOR THE TRANSFER WAS TO DEFRAUD CREDITORS.
¶8 The husband argues that he never intended to share his separate property with the wife. Rather, he only transferred the property to avoid creditors from potentially getting at it. The wife argues that transferring property into her name in order to avoid a judgment was a fraudulent transfer, and that he should not be allowed to rebut that the transfer was a gift with evidence of fraud.
¶9 A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate.[4] In an action of equitable cognizance there is a presumption in favor of the trial court's findings and they will not be set aside unless the trial court abused its discretion or the finding is against the clear weight of the evidence.[5]
 
¶10 Title 43 O.S. 2011 §121[6] requires a fair and equitable division of property acquired during the marriage by the joint industry of a husband and wife. Jointly-acquired property is that which is accumulated by the joint industry of the spouses during the marriage. The determination of the issue concerning separate ownership of property acquired during the marriage is dependent on the original source of the property.[7]
 
¶11 Interspousal transfers may occur as a result of a sale by one spouse to the other, as settlement of an impending divorce, or as a gift. A transfer by one spouse of separate property to another does not by itself erase the separate character of the asset or real property transferred; rather, the original ownership regime must be respected unless there is proof of an interspousal gift,[8] i.e. proof of donative intent. The law provides a rebuttable presumption of a gift where title to separately held real estate is placed by one ownership spouse's name to both spouses' names as joint tenants.[9] This presumption arises even if the property in question was purchased with one spouse's separate funds.[10]
 
¶12 This presumption in favor of a gift can be overcome by clear and convincing evidence of contrary intent including evidence of a purpose for placing the property in joint tenancy that is collateral to making a gift.[11] In this cause, the husband transferred the real property into the wife's name only. We have previously addressed this presumption in joint tenancy cases. For example, in Smith v. Villareal, 2012 OK 114, ¶12, 298 P.3d 533, during the marriage, the husband purchased two homes for his daughters from a prior marriage. He paid for these homes with his separate property. This was not disputed by the wife. However, both the husband's and wife's names appeared on the warranty deeds as joint tenants. Because the overwhelming evidence supported that the husband did not possess donative intent when title was conveyed to both spouses in joint tenancy, we held that the properties should not be included in marital property.
 
¶13 Similarly, in Larman v. Larman, 1999 OK 83, ¶16, 991 P.2d 536, the Court held that the presumption of a gift was overcome where the wife included the husband's name upon the deeds as joint tenant to property she held separately for the sole purpose of refinancing the mortgage loans on both properties. In Larman, the lender required that in order to qualify, both spouses had to be record owners and sign the loan related documents.
¶14 In both Smith, supra, and Larman, supra, there was nothing inherently unlawful about the real property transfers. The presumption of a gift was overcome with evidence because, although a lawful transferred occurred, the purpose was not intended to actually convert the property from separate to marital property.[12]
 
¶15 In Burrows v. Burrows, 1994 OK 129, ¶17, 886 P.2d 984, the Court addressed whether a father's attempted conveyance of property subject to a homestead exemption to avoid payment of past-due alimony and child support could be nullified as fraudulent. We held so, in part, because parents have a legal duty to support their children, and an ex-spouse and child were not the kind of creditor's to which a homestead exemption was meant to apply. The homestead exemption was intended to be a shield and not a sword.
 
¶16 Here, the Uniform Fraudulent Transfer Act[13] (the Act) prohibits precisely the type of transfer, which the husband relies on to explain his donative intent, as fraudulent. Section 116 of the Act provides:
A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
1. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or
b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
The reason that the husband said he made the transfer in real property to his wife falls squarely within the prohibition of the statute.
¶17 The Act was intended to prevent a debtor from shielding property from a creditor by fraudulently transferring it. A debtor should not be able to shield property from creditors and give it to a spouse on one hand to elude creditors and then turn around and use the transfer as a sword to avoid property division. We have no doubt that he intended to "gift" his wife the property. He admits, he "gave" it to her to avoid creditors, he just also intended to get it back. Nevertheless, in an equitable proceeding, it is incongruous to allow evidence of a fraudulent transfer to rebut the presumption of a gift. Consequently, we hold Smith, supra, and Larman, are not controlling of this cause. The husband readily admitted that fraud was the reason for the transfer, and he did not provide any other legitimate reasons for the transfer to his wife.
¶18 The parties could have had the properties deeded back to the husband at any time before their divorce, but they did not do so. Without evidence to rebut the presumption of gift, the trial court should not have set aside the transfer as his separate property. This is an equitable proceeding, and the wife does not seek to have the real property declared solely hers as the deed reflects. Rather, she asks that it be divided as marital property and we agree with this most equitable result in this cause.[14] Accordingly, we reverse the trial court and remand the matter for an equitable division of the property in question.
II. 
THE TRIAL COURT'S DENIAL OF SUPPORT ALIMONY IS SUPPORTED BY THE EVIDENCE.
¶19 The wife argues that the trial court abused its discretion when it neglected to award her support alimony. The husband argues that the wife failed to demonstrate any need for support alimony and there is insufficient evidence of his ability to pay it.
¶20 In a divorce action, the trial court is vested with wide discretion in awarding alimony.[15] On appeal, this Court will not disturb the trial court's judgment regarding alimony absent abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence.[16] The burden is upon the party appealing from a divorce decree to show that the findings and judgment are against the clear weight of the evidence.[17]
 
¶21 In awarding alimony, each case depends on the facts and circumstances,[18] and alimony must be reasonable.[19] Ability to pay is not the sole criterion for an award of alimony.[20] Support alimony is based upon a consideration of appropriate factors which include: demonstrated need during the post-matrimonial economic readjustment period; the parties' station in life; the length of the marriage and the ages of the parties; the earning capacity of each spouse; the parties' physical condition and financial means; the mode of living to which each spouse has become accustomed during the marriage; and evidence of a spouse's own income-producing capacity and the time necessary to make the transition for self-support.[21]
 
¶22 Here, prior to the marriage, the wife worked steadily in accounts receivable/accounts payable and book keeping in the steel industry. She also had experience working as a dental assistant. She admitted that she had a lot of experience in the workforce. The husband is a self employed carpenter who makes a relatively meager income which fluctuates at times with the house and building market.
 
¶23 The parties were married for ten years and neither were raising children during their marriage. For whatever reason, the wife refused to work. The wife testified that she needed cervical spine surgery which would slow her down for up to six months, and that she had other ailments such as high blood pressure, depression, anxiety, hypertension, IBS, diverticulitis, but that none of these would prevent her from working.
¶24 She moved out of the marital home in June of 2011. Instead of seeking employment, she rented a two bedroom apartment in Ohio, bought new furniture, shopped, went on trips with her friend and boyfriend, and gave money to a prior ex-husband and adult children. She had, by the time the final divorce decree had been entered, nearly five and a half years (now over eight years), to seek any needed training or education and/or employment.
¶25 While there have been cases in which the facts and evidence disclosed that the trial court's award of support alimony was insufficient, and in need of adjustment, this does not appear to be one of those cases.[22] We cannot say that the trial court abused its discretion in denying the wife's request for support alimony under these facts.
III.
EACH PARTY IS RESPONSIBLE FOR THEIR OWN ATTORNEY FEES.
¶26 On July 30, 2019, the husband filed a separate motion in this Court requesting we award him appeal related fees and costs pursuant to 12 O.S. 2011 App. 1, Rule 1.14;[23] 20 O.S. 2011 §15.1;[24] 12 O.S. 2011 §696.4 (as a prevailing party),[25] and 43 O.S. 2011 §110(D) and (E).[26] The wife argues that her appeal is not frivolous or without merit because she is entitled to claim an interest in property titled in her name; and request support alimony. She also argues that there are no overriding equitable considerations which favor an award of fees to the husband.
¶27 Each litigant ordinarily bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or specific between the parties.[27] Appeal-related attorney fees are recoverable if statutory authority exists for their award in the trial court.[28] Title 43 O.S. 2011 §110 provides for the award of counsel fees in divorce and subsequent related actions.[29] The husband has not prevailed in this appeal and neither the non-prevailing party in a matrimonial case, nor the principal spouse provider is under a duty to pay counsel fees.[30]
¶28 Counsel fees claimed pursuant to §110 do not depend on a prevailing party status.[31] Rather, in matrimonial litigation, a party should be awarded attorney fees only if they qualify for the benefit through a judicial balancing of the equities considering the means and property of each party,[32] or when the appeal is frivolous or lacks merit.[33]
¶29 Based on our review of the record, no compelling or overriding equitable considerations exist to support the wife's payment of the husband's attorney fees or costs incurred in this appeal. Clearly, this appeal was not frivolous or without merit because the trial court is reversed. Nor is there any compelling or overriding equitable consideration which would support the husband's payment of the wife's attorney fees and costs incurred in this appeal. Therefore, we hold that each party is responsible for their appeal-related attorney fees and costs.
CONCLUSION
¶30 A divorce proceeding is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate.[34] Interspousal transfers may occur as a result of a sale by one spouse to the other, as settlement of an impending divorce or as a gift. A transfer by one spouse of separate property to another does not by itself erase the separate character of the asset or real property transferred. Rather, the original ownership regime must be respected unless there is proof of an interspousal gift,[35] i.e. proof of donative intent. In this equitable proceeding, we determine that an illicit transfer of separate property, such as a fraudulent transfer to avoid creditors, is not sufficient evidence to rebut a presumption of a gift.
¶31 Because the husband presented no other evidence to rebut that the real property transfer was a gift, the trial court should have divided the real property equitably. However, we cannot say that the trial court abused its discretion in denying the wife's request for support alimony under the facts of this cause. Nor is there any compelling or overriding equitable consideration which would support the husband's payment of the wife's attorney fees and costs incurred in this appeal. Each party is responsible for their appeal-related attorney fees and costs.
CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED AND CAUSE REMANDED.

GURICH, C.J., KAUGER, EDMONDSON, COMBS, KANE and ROWE, JJ., concur;
DARBY, V.C.J., WINCHESTER, J., (by separate writing), and COLBERT, JJ., dissent.

FOOTNOTES

[1] According to the husband they were married on February 17, 2001. According to the wife, it was March 26, 2001. Apparently the marriage license was lost in a tornado. Nevertheless, it is undisputed that the couple did marry in 2001.

[2] The husband contends that at the time of marriage, his separate property included: 1) Lots 4-12, inclusive, Block Forty-Five in the town of Blanchard; 2) the Woodmaster Shop, East 2 acres of the North 3 acres of the NW 1/4 of the NE 1/4 Section Thirty-one, Township Eight, North Range Four West, McClain County, Oklahoma; and 3) 20 acres adjacent to the marital interests, the North Half of the Southeast Quarter of the Southeast Quarter of Section Fifteen, Township Eight North, Range Five West of the Indian Meridian, Grady County, Oklahoma. The husband sought to void deeds transferring all of these properties to the wife during the marriage.

[3] In the Petition for Certiorari, the wife does not dispute the trial court's determination as to the date of separation or the Court of Appeals affirmance regarding that date. She does state in the facts, that the evidence indicated that they lived apart, but never intended to divorce until the husband refused marriage counseling and filed for divorce. Nevertheless, her arguments, and the reasons for granting certiorari do not address this issue whatsoever. Accordingly, we do not address whether the determination as to the actual date of separation was in error. Hough v. Leonard, 1993 OK 112, ¶¶14-16, 867 P.2d 438; Oklahoma Supreme Court Rules, Rule 1.180, 12 O.S. 2011 App. 1.

[4] Smith v. Villareal, 2012 OK 114, ¶7, 298 P.3d 533; Jackson v. Jackson, 1999 OK 99, ¶7, 995 P.2d 1109; Larman v. Larman, 1999 OK 83, ¶17, 991 P.2d 536; Teel v. Teel, 988 OK 151, ¶7, 766 P.2d 994.

[5] Smith v. Villareal, see note 4, supra; Francis v. Rogers, 2001 OK 111, ¶24, n. 22, 40 P.3d 481; Groseclose v. City of Tulsa, 1998 OK 112, ¶18, 990 P.2d 828; Krosmico v. Pettit, 1998 OK 90, ¶23, 968 P.2d 345.

[6] Title 43 O.S. 2011 §121 provides in pertinent part:
. . .B. The court shall enter its decree confirming in each spouse the property owned by him or her before marriage and the undisposed-of property acquired after marriage by him or her in his or her own right. Either spouse may be allowed such alimony out of real and personal property of the other as the court shall think reasonable, having due regard to the value of such property at the time of the dissolution of marriage. Alimony may be allowed from real or personal property, or both, or in the form of money judgment, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall, subject to a valid antenuptial contract in writing, make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof. The court may set apart a portion of the separate estate of a spouse to the other spouse for the support of the children of the marriage where custody resides with that spouse. . .

[7] Smith v. Villareal, see note 4, supra at ¶8, Longmire v. Longmire, 1962 OK 29, ¶9, 376 P.2d 273; Spencer v. Spencer, 1947 OK 243, ¶8, 184 P.2d 761.

[8] Smith v. Villareal, see note 4, supra at ¶9; Larman v. Larman, see note 4, supra at ¶8.

[9] Smith v. Villareal, see note 4, supra at ¶9; Larman v. Larman, see note 4, supra at ¶9; Chastin v. Posey, 1983 OK ¶8, 665 P.2d 1179; Fletcher v. Fletcher, 1952 OK 28, ¶14-15, 244 P.2d 827.

[10] Smith v. Villareal, see note 4, supra at ¶9; Larman v. Larman, see note 4, supra at ¶9; Chastin v. Posey, see note 9, supra; Mendenhall v. Walters, 1916 OK 524, ¶10, 157 P.732.

[11] Smith v. Villareal, see note 4, supra at ¶10; Larman v. Larman, see note 4, supra at ¶¶9-10.

[12] The issue of transferring property such as this has come up several times in the Court of Civil Appeals. For example, see, Beene v. Beene, 2014 OK CIV APP 32, 324 P.3d 1264 (Husband rebutted presumption of donative intent when he added wife's name to separate property five months into the marriage.); Bartlett v. Bartlett, 2006 OK CIV APP 112, 114 P.3d 173 (Separate property transferred to avoid some estate taxes); King v. King, 2009 OK CIV. APP. 49, 212 P.3d 1232 (Separate property transferred to avoid child support lawsuit).

[13] Title 24 O.S. 2011 §§112 et seq.

[14] Title 43 O.S. 2011 §121, see note 6, supra.

[15] Hutchings v. Hutchings, 2011 OK 17, ¶14, 250 P.3d 324; Peyravy v. Peyravy, 2003 OK 92, ¶13, 84 P.3d 720; McLaughlin v. McLaughlin, 1999 OK 34, ¶12, 979 P.2d 257.

[16] Hutchings v. Hutchings, see note 15, supra; Peyravy v. Peyravy, see note 15, supra; McLaughlin v. McLaughlin, see note 15, supra.

[17] Peyravy v. Peyravy, see note 15, supra; ; McLaughlin v. McLaughlin, see note 15, supra; See, Traczyk v. Traczyk, 1995 OK 22, ¶22, 891 P.2d 1277.

[18] Hutchings v. Hutchings, see note 15, supra; Peyravy v. Peyravy, see note 15, supra; McLaughlin v. McLaughlin, see note 15, at ¶13, supra; Durland v. Durland, 1976 OK 102, ¶5, 552 P.2d 1148.

[19] Hutchings v. Hutchings, see note 15, supra; Peyravy v. Peyravy, see note 15, supra; McLaughlin v. McLaughlin, see note 15, supra; Whitehead v. Whitehead, 1999 OK 91, ¶5, 995 P.2d 529.

[20] Peyravy v. Peyravy, see note 15, supra; McLaughlin v. McLaughlin, see note 15, at ¶13, supra.

[21] Hutchings v. Hutchings, see note 15, supra; Peyravy v. Peyravy, see note 15, at ¶14, supra; Younge v. Younge, 2002 OK 12, ¶14, n.21, 41 P.3d 966; McLaughlin, see note 15, supra.

[22] For example: in Hutchings v. Hutchings, see note 15, supra, the Court increased support alimony from $9,000.00 to $54,000.00 where the parties had been married for twenty-two years, the husbands income was three times the wife's and she needed additional education and training to increase her income potential; in Peyravy v. Peyravy, 2003 OK 92, 84 P.3d 720, support alimony of $24,000.00 was insufficient where the parties had been married for twenty-two years, the husband supported the family and made $9,100.00 a month and the wife's health inhibited her ability to work full time outside the home; in Mocnbik v. Mocnbik, 1992 OK 99, 838 P.2d 500 the Court increased alimony from $60,000 to $120,000 where the parties had been married eighteen years, the husband earned $215,000 a year and the wife had an earning capacity of $20,000; in Durland v. Durland, 1976 OK 102, 552 P.2d 1148 the Court increased alimony from $36,000 to $48,000 where the parties had been married nineteen years, the wife earned a minimal income and was not trained for any particular employment and one of their children required special care; in Aronson v Aronson, 1970 OK 74, 468 P.2d 493, the court increased alimony by $30,000.00 where the parties had been married for fifteen years, the husband was a doctor and the wife worked as a substitute elementary teacher.

[23] Title 12 O.S. 2011 App. 1, Rule 1.14 provides in pertinent part:
(A) Costs.
(1.) Costs must be sought by a separately filed and labeled motion in the appellate court prior to mandate being issued. The Clerk shall not tax as costs any expense unless the person claiming the same, prior to the issuance of a mandate in the cause, shall file with the Clerk a verified statement of taxable cost items showing that person has paid the same. . . .
(B) Attorney's Fee.
A motion for an appeal related attorney's fee must be made by a separately filed and labeled motion in the appellate court prior to issuance of mandate. The motion must state the statutory and decisional authority allowing the fee. See 12 O.S.§ 696.4(C).

[24] Title 20 O.S. 2011 §15.1 provides:
On any appeal to the Supreme Court, the prevailing party may petition the court for an additional attorney fee for the cost of the appeal. In the event the Supreme Court or its designee finds that the appeal is without merit, any additional fee may be taxed as costs.

[25] Title 12 O.S. 2011 §696.4 provides in pertinent part:
C. Except as provided in Subsection D of this section, an application for attorney fees for services performed on appeal shall be made to the appellate court by separate motion filed any time before issuance of mandate. The application shall cite authority for awarding attorney fees but shall not include evidentiary material concerning their amount. The appellate court shall decide whether to award attorney fees for services on appeal, and if fees are awarded, it shall remand the case to the trial court for a determination of their amount. The trial court's order determining the amount of fees is an appealable order.

[26] Title 43 O.S. 2011 §110(D) and (E) which provides:
D. Upon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.
E. The court may in its discretion make additional orders relative to the expenses of any such subsequent actions, including but not limited to writs of habeas corpus, brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final orders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.

[27] Boatman v. Boatman, 2017 OK 27, ¶16, 404 P.3d 822; Eagle Bluff, L.L.C. v. Taylor, 2010 OK 47, ¶16, 237 P.3d 173.

[28] Casey v. Casey, 2002 OK 70, ¶26, 58 P.3d 763; Daniel v. Daniel, 2001 OK 117, ¶24, 42 P.3d 863; First Community Bank of Blanchard v. Hodges, 1995 OK 124, ¶13, 907 P.2d 1047.

[29] Title 43 O.S. 2011 §110, see note 26, supra.

[30] Foshee v. Foshee, 2010 OK 85, ¶22, 247 P.3d 1162; King v. King, 2005 OK 4, ¶30, 107 P.3d 570; Casey v. Casey, see note 28, supra.

[31] Casey v. Casey, see note 28, supra

[32] Boatman v. Boatman, see note 27, supra; Childers v. Childers, 2016 OK 95, ¶29, 382 P.3d 1020.

[33] Title 20 O. S. 2011 §15.1, see note 24, supra; Casey v. Casey, see note 28, supra; TRW/Reda Pump v. Brewington, 1992 OK 31, §13, 829 P.2d 15.

[34] Smith v. Villareal, see note 4, supra; Jackson v. Jackson, see note 4, supra; Larman v. Larman, see note 4, supra; Teel v. Teel, see note 4, supra.

[35] Smith v. Villareal, see note 4, supra at ¶9; Larman v. Larman, see note 4, supra at ¶8.




WINCHESTER, J., with whom Darby, V.C.J. and Colbert, J. join, dissenting:
¶1 I concur in part; dissent in part to the majority decision. While I agree with the majority that the trial court properly denied support alimony herein, I cannot agree with the majority's position that the trial court erroneously awarded the husband his separate property previously transferred to the wife.
¶2 The majority readily recognizes that in divorce proceedings the trial court is afforded wide discretion to divide the marital estate. Teel v. Teel, 1988 OK 151, ¶ 7, 766 P.2d 994, 998 (trial court has wide latitude in determining what property shall be awarded to each party). Nonetheless, the majority ignores this discretion to find abuse where none exists, instead invading the trial court's province by reversing the trial court's ruling on the division of property.
¶3 An appellate court should not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. Hough v. Hough, 2004 OK 45, ¶ 9, 92 P.3d 695, 700. Our cases demonstrate considerable deference to the trial court's division of marital assets in a divorce proceeding. Childers v. Childers, 2016 OK 95, ¶ 12, 382 P.3d 1020, 1023. "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law, when there is no rational basis in evidence for the ruling, or if it acts arbitrarily." Colclasure v. Colclasure, 2012 OK 97, ¶ 4, 295 P.3d 1123, 1132 (Watt, J. with whom Winchester, J. and Combs, J. join dissenting). None of these circumstances exist herein.
¶4 Here, the husband transferred separate business and personal property, all owned before the marriage, to the wife as a shelter when he feared his assets could become subject to a potential lawsuit judgment against him. As recognized by the majority, the husband testified he never intended the property to be a gift nor did the wife believe it to be such. The lawsuit against the husband was later dismissed, resulting in no judgment against him.
¶5 The trial court found there was sufficient evidence presented to support the finding that the husband's separate property was not intended to be a gift to the wife. Larman v. Larman, 1999 OK 83, ¶ 22, 991 P.2d 536, 543 (where evidence reflects conclusion that title to one spouse's separate real estate was placed in both names as joint tenants solely to achieve a purpose collateral to making a gift, the presumption of an interspousal gift is deemed rebutted). The husband made the requisite showing and the majority should not be allowed to substitute its judgment for that of the trial court under the guise of an abuse of discretion that does not exist.
¶6 The burden is on the party claiming error to show that the findings and judgment of the trial court are against the clear weight of the evidence. Manhart v. Manhart, 1986 OK 12, ¶ 5, 725 P.2d 1234, 1236. There being no evidence sufficient to show the trial court abused its discretion as to the property division, the ruling of the trial court should be affirmed.
 




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 112, 144 P.3d 173, BARTLETT v. BARTLETT
Cited
 2009 OK CIV APP 49, 212 P.3d 1232, KING v. KING
Cited
 2014 OK CIV APP 32, 324 P.3d 1264, BEENE v. BEENE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 151, 766 P.2d 994, 60 OBJ 17, Teel v. Teel
Discussed at Length
 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Discussed
 1992 OK 99, 838 P.2d 500, 63 OBJ 2005, Mocnik v. Mocnik
Discussed
 1993 OK 112, 867 P.2d 438, 64 OBJ 2836, Hough v. Leonard
Discussed
 1947 OK 243, 184 P.2d 761, 199 Okla. 133, SPENCER v. SPENCER
Discussed
 1994 OK 129, 886 P.2d 984, 65 OBJ 3967, Burrows v. Burrows
Discussed
 1952 OK 28, 244 P.2d 827, 206 Okla 481, FLETCHER v. FLETCHER
Discussed
 1916 OK 524, 157 P. 732, 53 Okla. 598, MENDENHALL v. WALTERS
Cited
 2001 OK 111, 40 P.3d 481, 72 OBJ 3678, FRANCIS v. ROGERS
Discussed
 2001 OK 117, 42 P.3d 863, 72 OBJ 3708, DANIEL v. DANIEL
Discussed
 1962 OK 29, 368 P.2d 860, USELTON v. BESTWAY FREIGHT LINES, INC.
Cited
 1962 OK 219, 376 P.2d 273, LONGMIRE v. LONGMIRE
Cited
 2002 OK 12, 41 P.3d 966, 73 OBJ 565, YOUNGE v YOUNGE
Discussed
 1995 OK 22, 891 P.2d 1277, 66 OBJ 1102, Traczyk v. Traczyk
Discussed
 2002 OK 70, 58 P.3d 763, CASEY v. CASEY
Discussed
 1970 OK 74, 468 P.2d 493, ARONSON v. ARONSON
Discussed
 1995 OK 124, 907 P.2d 1047, 66 OBJ 3579, First Community Bank of Blanchard v. Hodges
Discussed
 2003 OK 92, 84 P.3d 720, PEYRAVY v. PEYRAVY
Discussed at Length
 2004 OK 45, 92 P.3d 695, HOUGH v. HOUGH
Discussed
 2005 OK 4, 107 P.3d 570, KING v. KING
Discussed
 2010 OK 47, 237 P.3d 173, EAGLE BLUFF, L.L.C. v. TAYLOR
Discussed
 2010 OK 85, 247 P.3d 1162, FOSHEE v. FOSHEE
Discussed
 2011 OK 17, 250 P.3d 324, HUTCHINGS v. HUTCHINGS
Discussed
 2012 OK 97, 295 P.3d 1123, COLCLASURE v. COLCLASURE
Discussed
 2012 OK 114, 298 P.3d 533, SMITH v. VILLAREAL
Discussed at Length
 1976 OK 102, 552 P.2d 1148, DURLAND v. DURLAND
Discussed at Length
 2016 OK 95, 382 P.3d 1020, CHILDERS v. CHILDERS
Discussed at Length
 2017 OK 27, 404 P.3d 822, BOATMAN v. BOATMAN
Discussed
 1999 OK 91, 995 P.2d 1098, 70 OBJ 3444, Whitehead v. Whitehead
Cited
 1999 OK 99, 995 P.2d 1109, 70 OBJ 3755, Jackson v. Jackson
Discussed
 1998 OK 90, 968 P.2d 345, 69 OBJ 3237, Krosmico v. Pettit
Discussed
 1998 OK 112, 990 P.2d 828, 69 OBJ 3870, Groseclose v. City of Tulsa
Discussed
 1999 OK 34, 979 P.2d 257, 70 OBJ 1364, McLaughlin v. McLaughlin
Discussed
 1999 OK 83, 991 P.2d 536, 70 OBJ 3260, Larman v. Larman
Discussed at Length
 1983 OK 46, 665 P.2d 1179, Chastain v. Posey
Cited
 1986 OK 12, 725 P.2d 1234, 57 OBJ 877, Manhart v. Manhart
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 696.4, Provision for Costs, Attorney Fees, and Interest
Discussed at Length
Title 20. Courts
 Cite
Name
Level

 20 O.S. 15.1, Appeals - Additional Attorney Fees
Discussed
Title 24. Debtor and Creditor
 Cite
Name
Level

 24 O.S. 112, Short Title
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 110, Orders Concerning Property, Children, Support and Expenses
Discussed at Length
 43 O.S. 121, Restoration of Maiden or Former Name - Alimony - Property Division
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA