DANCER v. DANCER
2022 OK CIV APP 25
Case Number: 119559
Decided: 04/26/2022
Mandate Issued: 06/22/2022
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2022 OK CIV APP 25, __ P.3d __

 

IN RE THE MARRIAGE OF:

ALISON FAITH DANCER, Petitioner/Appellant/Counter-Appellee,
v.
JACK TOM DANCER, Respondent/Appellee/Counter-Appellant.

APPEAL FROM THE DISTRICT COURT OF
PAYNE COUNTY, OKLAHOMA

HONORABLE MICHAEL KULLING, TRIAL JUDGE

AFFIRMED IN PART; REVERSED IN PART AND REMANDED 

Melissa DeLacerda, Jimmy Oliver, DELACERDA & OLIVER, ATTORNEYS AT LAW, Stillwater, Oklahoma, and
Keith A. Jones, KA JONES LAW, PLLC, Tulsa, Oklahoma, for Petitioner/Appellant/Counter-Appellee,

Laura McConnell-Corbyn, HARTZOG CONGER CASON, Oklahoma City, Oklahoma, for Respondent/Appellee/Counter-Appellant.

ROBERT D. BELL, PRESIDING JUDGE:

¶1 In this dissolution of marriage proceeding, Petitioner/Appellant/Counter-Appellee, Alison Faith Dancer (Wife), and Respondent/Appellee/Counter-Appellant, Jack Tom Dancer (Husband), both appeal from portions of the trial court's decree valuing and dividing marital assets and determining separate property. We hold the trial court abused its discretion when it determined the home occupied by the parties during the marriage (marital home) was marital property and when it awarded Husband 75% of the marital home's value. The marital home is Husband's separate property, but there is a marital component in the increase in value of the home due to the parties' efforts, skills or funds during the parties' twenty-five (25) year marriage. The trial court's characterization of the marital home as marital property is reversed and remanded. On remand, the trial court shall hold a hearing to determine the increase in value of the marital home in accordance with Theilenhaus v. Theilenhaus, 1995 OK 5890 P.2d 925

¶2 The parties married on November 4, 1995. The parties' marriage was dissolved January 12, 2021, and a decree of dissolution of marriage was filed April 14, 2021. Wife is a psychiatrist and Husband is a retired general surgeon. This was Husband's second marriage and Wife's first marriage. There are no children of this marriage. The parties met while Wife was completing her medical education. Husband was in his mid-50s and Wife was in her mid-20s when they married. Husband brought substantial assets to the marriage. Wife brought no assets to the marriage.

¶3 In 1994, while the parties were dating, Husband purchased a parcel of real property with separate cash and he contracted with an architect and builder to construct a home. The home eventually became the marital home and the parties occupied the marital home for over twenty (20) years. Both parties were actively involved in the planning stages and the construction of the home. On April 26, 1994, Husband obtained a one-year loan in the amount of $270,000.00 from Stillwater National Bank (Bank). Husband also borrowed approximately $50,000.00 from Bank to build specialized craftsman furniture for the marital home. These loans were secured by mortgages filed against the marital home. At trial, Husband denied the one-year "construction" loan was ever funded and claimed he used his separate property, i.e. certificates of deposits and monies at Bank, to pay the construction draws.

¶4 When the parties married in November 1995, the house was not complete. The parties moved into the marital home January 1996. In October 1996, Husband obtained two loans from Bank and mortgaged the marital home to secure the two loans. The first loan was for $207,000.00 and the second loan was for $109,900.00 (total $316,900.00). The loans' settlement statement listed the "PAYOFF" amount for two prior secured loans from Stillwater Bank in the amount of $272,130.12 and $54,130.47. Notwithstanding the settlement statement, filed mortgages and other documentation, Husband disputed that the marital home "was the agent that received" the borrowed funds. Husband testified he borrowed funds in 1996, and mortgaged the marital home as collateral, to acquire, repair and remodel other separate and marital real property. All mortgage payments, homeowner's insurance, landscaping costs, and home repairs were paid with marital funds. The parties claimed the mortgage interest deduction of $151,700.00 on their joint income tax returns for years 2001-2011.

¶5 Husband testified he expended his personal funds to assist Wife in "starting up" her medical practice. These costs included office space, malpractice insurance and an answering service. Husband did not testify as to the amount of such funds, nor did he produce any documentation reflecting this expenditure. Wife testified her start-up costs were limited and that marital funds were used to purchase artwork, decorations, equipment, and furniture. Husband's attorney offered a depreciation schedule on the parties' 2015 tax return showing depreciation of $164,940.00 related to Wife's practice. On cross, Wife acknowledged that amount was listed on the depreciation schedule, but denied the depreciated assets were start-up assets. Wife testified she opened her practice in January 1996, and that the depreciated assets were purchased in 1998, 1999, 2001-03, 2012 and 2015.

¶6 In 2013, Wife sought mental health counseling with the reverend at the parties' church. Wife developed "inappropriate feelings" for the reverend. In February 2015, Wife entered in-patient treatment at The Menninger Clinic in Houston. The parties expended marital funds of $160,400.00 to pay for the medical treatment and Wife's office expenses. When Wife returned to Oklahoma, she lived apart from Husband for less than a year. Thereafter, Wife lived with Husband in the marital home until the trial court entered its temporary order on May 16, 2018, and awarded Husband temporary use and possession of the marital home.

¶7 Wife filed a petition for dissolution of marriage January 19, 2018. The merits trial was held over five (5) days. Both parties submitted proposed findings of facts and conclusions of law. On January 12, 2021, the court issued an order and findings of the court. The trial court determined the marital residence was marital property because several mortgages against the property were repaid with marital funds; the parties claimed the home mortgage interest deduction on 10 federal income tax returns; Wife resided in the home for over twenty years; and Wife was regularly involved with the construction of the home. The court awarded Husband possession of the home and 75% of its value. The court valued the vehicle driven by Wife at $5,000.00 and valued and divided other marital assets and set aside separate property to the parties. The trial court determined a Wells Fargo Account ending #4203 was a marital asset, and valued the account, as of the date of the petition, at $773,773.00, and awarded each party one half of this value.

¶8 Before the decree was filed, Wife filed a motion to clarify only addressing Account #4203. Wife contended Account #4203 passively accumulated an additional $200,000.00 by the end of 2019, and that the court failed to equitably divide this accumulation. After a hearing, the court awarded all post-separation passive income on Wells Fargo Account #4203 - a marital asset - to Husband.

¶9 The court denied Husband's claim that Wife should be charged the $160,400.00 in marital assets that she dissipated from the marital estate due to Wife's inappropriate relationship with the reverend. The court found Wife acknowledged $164,940.00 [of Husband's separate property] was invested by Husband to assist Wife in developing her medical practice and the court ordered Wife to pay Husband an offset of $82,470.00.

¶10 Wife now appeals from the trial court's uneven division of the marital home, the court's valuation of the vehicle, the court's failure to divide the passive growth of the Wells Fargo Account #4203, and the court's offset award of $82,470.00 to Husband. Husband counter appeals from the trial court's denial of his dissipation of marital assets claim. Husband also counter-appeals the trial court's determination that the martial home is marital property, but concedes if the marital home is marital property, then the trial court's 75/25 division is equitable. Alternatively, Husband contends Wife failed to meet her burden of proving that marital efforts, skills and funds increased the value of Husband's premarital home; therefore, Wife has no claim to the in-marriage enhancement in value of the marital home.

¶11 Dissolution of marriage proceedings are of equitable cognizance. Metcalf v. Metcalf, 2020 OK 20465 P.3d 1187Id. This Court will not set aside the trial court's findings unless the trial court abused its discretion or the findings are against the clear weight of the evidence. Id.

¶12 We first address Husband's claim that Wife is precluded from seeking appellate relief for all issues - except the Wells Fargo Account - because Wife filed a motion to clarify which only addressed the Wells Fargo Account. Husband contends the motion to clarify was tantamount to a motion for new trial pursuant to 12 O.S. 2021 §991In re Marriage of Murphy, 2010 OK CIV APP 1225 P.3d 820Supreme Court Rules, 12 O.S. 2021 Ch. 15 App. 1. We now address the substantive merits of this appeal.

¶13 On appeal, Wife contends the trial court properly exercised its discretion when it found the parties' marital home was a marital asset; but, the court abused its discretion when it awarded Husband 75% of the home's value. Husband counters the trial court erred when it failed to characterize the marital home as Husband's separate property. Alternatively, Husband contends the 75/25 division is equitable. The parties stipulated the marital home's value around the date of the dissolution of the marriage was $607,500.00 and Husband testified the home had a value of $300,000.00 when it was built.

¶14 Title 43 O.S. 2021 §121inter alia, property owned by a spouse before the marriage, which retains its separate status during coverture because it is maintained in an uncommingled state as a spouse's individual property." Thielenhaus, 1995 OK 5

¶15 After carefully reviewing the record, we hold the marital home was Husband's separate property when the parties married. Husband purchased the land prior to the marriage in May 1994, and in April 1995, Husband borrowed $270,000.00 from Stillwater Bank under a construction loan agreement. That loan was secured by a real estate mortgage on the marital home filed May 5, 1995. Around April 1995, Husband hired an architect, engaged a general contractor and began constructing the home. The parties were married November 1995, and they moved into the home January 1996. Based on these facts, we find the trial court abused its discretion when it characterized the marital home as marital property. This portion of the decree is reversed.

¶16 However, our analysis does not end here. After the parties married, the evidence shows the marital home was encumbered by two loans: one for $272,130.12, and another for $54,130.47 (Husband testified he borrowed additional money from Bank to have specialized furniture made for the marital home). Husband testified the home's value was $300,000.00 when the parties moved into the home in 1996. Based on these facts, the separate property component of the marital home was fully encumbered and had no equity.

¶17 In October 1996, while the parties were married, Husband borrowed $207,000.00 and $109,900.00 (total $316,900.00) from Bank. The settlement statement for this loan listed the "PAYOFF" amount for two secured loans from Stillwater Bank in the amount of $272,130.12 and $54,130.47. The 1996 loans were secured by the marital home. Thereafter, the marital home was used as collateral for several other Bank loans taken by the parties to purchase real estate, remodel property, and improve Husband's lake cabin. The parties paid all the mortgage payments due to Bank from joint funds. The parties also mutually benefitted by deducting a total of $151,700.00 in home mortgage interest on their joint tax returns from 2001 through 2011. At the time of the dissolution of marriage, the marital home was unencumbered. Husband represented the marital home had a $300,000.00 value when the parties married. The parties stipulated the marital home's value was $607,500.00. This reflects an increase in the home value of $307,500.00. Consequently, there is very likely a marital component within the marital home's equity. However, on appeal, Husband maintains Wife is barred from claiming an equitable portion of the in-marriage enhanced value of the marital home because she failed to produce evidence at trial showing such increase was due to the parties' efforts, funds and skills.

¶18 Husband correctly recites that Wife, as the non-owning spouse, has the burden of establishing the increased value of Husband's separate property was a result of either spouse's efforts, skills or expended funds. Theilenhaus, 1995 OK 5Theilenhaus factors. Notwithstanding Husband's arguments, we reiterate dissolution of marriage proceedings are equitable in nature. Metcalf, 2020 OK 20

¶19 There is no dispute the marital home was fully encumbered upon the parties' marriage and that joint funds were used to pay the obligations secured by the marital home. The record also contains sufficient evidence supporting a finding that both parties invested some efforts and skills in improving the marital home. However, the record does not contain any evidence as to whether the marital home's increased or enhanced value was "produced by investment managed by neither spouse or by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control." Theilenhaus,1995 OK 5 at ¶9. Accordingly, on remand, Wife shall have the opportunity to demonstrate whether any portion of the in-marriage increase in the home's value was due to the parties' efforts, funds and skills.

¶20 Wife next contends the trial court abused its discretion when it valued the vehicle she drove at $5,000.00. We cannot find the trial court abused its discretion when it valued the vehicle at $5,000.00. The trial court's valuation of this marital asset is affirmed.

¶21 Wife also argues the trial court abused its discretion when it failed to award Wife one-half of the increase in value of Account ending #4203 that accumulated from the petition's file date to the date of dissolution of the marriage. Wife asserts the account's value on the date of filing was $773,773.00, and the evidence at trial showed the account's value on December 31, 2019, was $961,725.93. The trial court valued the account as of the date of filing and awarded each party 50%. On appeal, as below, Wife contends the trial court abused its discretion when it failed to divide the growth of said account and when it awarded a windfall to Husband of over $94,000 (half of the asset's passive gain).

¶22 Husband counters that Wife "cherry picked" this account to appeal because of its increased valuation. He urges the trial court should use the same valuation date for all the parties' investment and retirement accounts in order for their valuation to be equitable. Husband also asserts he actively managed and invested

¶23 The trial court is vested with discretion in determining the cut-off time for the valuation of marital assets, and "the date of valuation is to be determined by the trial court after due consideration of all the circumstances of the case." Thielenhaus, 1995 OK 5Id.

¶24 Based on the trial court's decree, we discern the trial court intended to equally divide Account ending #4203. However, this intent was not accomplished by the trial court's award of all the post-petition increase in value to Husband. Indisputably, this account increased in value during the passage of time from the file date of the petition to the date of the dissolution of the marriage. There was some evidence that Husband invested $14,000.00 post-petition in the account and that he "actively managed" the account. Nonetheless, Husband produced no evidence of the effect of his investment and active management on the account's appreciation. The record is devoid of any evidence as to whether the growth in Account ending #4203 (a marital asset) was simply due to market fluctuations. Under the circumstances of this case, we hold this marital asset's substantial appreciation - while this dissolution action was pending - is marital property and that such appreciation should have been equitably divided between the parties. See Favell v. Favell, 1998 OK CIV APP 22957 P.2d 556

¶25 Wife also appeals from the trial court's offset award to Husband of $82,470.00, as reimbursement for Husband's separate property investment in Wife's medical practice. In January 1996, over 20 years ago, Wife opened a medical practice as a psychiatrist. Wife testified the parties used marital funds to start the practice. She testified her start-up costs were limited and that in subsequent years, artwork, decorations, equipment, and furniture were purchased - all with marital funds. Husband claimed he used his separate property to start-up Wife's business. Husband acknowledged the expenses were limited to office space, malpractice insurance, and a service to answer the telephone, but Husband offered no dollar amount for these costs.

¶26 During Wife's cross-examination, Husband's counsel asked Wife to read entries on a depreciation schedule on the parties' 2015 tax return. This schedule listed depreciable assets of $164,940.00 for Wife's medical practice. Husband's counsel alluded that this schedule was evidence of Husband's separate property contribution to Wife's practice. The trial court accepted Husband's premise and held Husband financially assisted Wife by that amount in starting up her medical practice. The Court awarded Husband an offset of $82,470.00 for these alleged start-up costs.

¶27 We hold the trial court abused its discretion when it awarded Husband the $82,470.00 offset. There is no evidence in the record concerning the present value of the assets in Wife's medical practice or of the amount of Husband's investment. Furthermore, Husband did not show a nexus between the 2015 tax return depreciation schedule, the current value of the medical practice's assets and Husband's separate property investment. Even so, Oklahoma law does not permit a trial court to reimburse a spouse, dollar for dollar, for his untraceable separate investment into a marital business. A spouse 'may treat separate property in a manner so that it alters their legal relationship to the property, and it becomes property of the marital estate.'" Gillett v. McKinney, 2019 OK CIV APP 24440 P.3d 69quoting Standefer v. Standefer, 2001 OK 3726 P.3d 104Theilenhaus,1995 OK 5Colclasure v. Colclasure, 2012 OK 97295 P.3d 1123

¶28 On counter-appeal, Husband contends the trial court abused its discretion when it denied his claim for a credit in an amount equal to the marital assets dissipated (spent) by Wife seeking treatment at Menninger's Clinic - a mental health treatment facility. Husband argues Wife sought counseling for her "guilt and shame" due to her inappropriate feelings towards the church reverend, and this "marital misconduct" caused a loss of marital assets.

¶29 Dissipation is a consideration in the division of marital property. However, "[p]ersonal conduct is material only to the extent that it may reflect the existence or non-existence of that endeavor which contributed to the creation of the [marital] estate." Hill v. Hill, 1946 OK 283174 P.2d 232

¶30 Furthermore, Husband implicitly condoned Wife's expenditure of these funds by living with Wife for two years after the in-patient treatment. "Condonation in the law of divorce is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness." Every v. Every, 1956 OK 6293 P.2d 612

¶31 We also hold the trial court did not abuse its discretion when it denied Husband's claim that Wife should be sanctioned or financially punished for alleged spoliation (deletion) of electronic evidence (emails) of Wife's "inappropriate relationship" with the reverend.

¶32 For the foregoing reasons, the trial court's decree is affirmed in part, reversed in part and remanded for further proceedings.

¶33 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

GOREE, J., and PRINCE, J., (sitting by designation) concur.

FOOTNOTES

Theilenhaus at ¶10, citing May v. May, 1979 OK 82596 P.2d 536